Jackson, Circuit Judge.
The questions presented for decision in these cases relate to the respective rights and priorities of different lien claimants upon the property of the Kentucky Union Railway Company, which was chartered under the laws of Kentucky to construct, own, and operate a designated line of railway in said state, about 100 miles in *242 length. Prior to 1883 about 15 miles of its road was completed and in operation. In order to raise funds with which to extend its line eastwardly and westwardly from the completed portion, said railway company, on July 2, 1888, executed a mortgage or trust deed upon its property then owned and thereafter to be acquired to the Central Trust Company of New York, to secure an issue of $3,000,000 first mortgage bonds. Said mortgage was executed under authority duly conferred, and was properly recorded. The bonds secured thereby were issued and used for the purposes of the company. Thereafter, on July 1, 1890, said railway company executed a second mortgage on the same properties to the Columbia Finance & Trust Company to secure a further issue of $1,300,000 of its bonds. This mortgage was also duly executed and recorded, and the bonds thereby secured were issued and used by the company. J. Kennedy Tod & Co. subsequently advanced the company $72,500, under an agreement that said sum should be secured by $140,-000 of.said second mortgage bonds, which were to be delivered to said firm as collateral security for said advance, with interest from January 6, 1891. The company failed to comply with its promise to deliver said collateral security, and in February, 1891, said J. Kennedy Tod & Co., in connection with said mortgagees, the Central Trust Company of New York and Columbia Finance & Trust Company, filed their bill in the circuit court for the district of Kentucky against said railway company, alleging that it had become and was entirely insolvent; that divers persons, whose names were unknown to complainants, claimed mechanics’ liens upon all or a portion of the company’s property, which-they threatened to enforce, and which, if enforced in separate proceedings, would cause a severance and disintegration of the railroad line, etc.; and praying that the court would appoint a receiver of said company’s railway, property, assets, etc.; that it would foreclose said mortgages, and sell said railway, with its properties and franchises, as an entirety, and apply the proceeds to the satisfaction of the debt due complainants, J. Kennedy Tod & Co., and the debts secured by said mortgages, together with other lien debts, according to their respective priorities. A receiver was appointed, and a reference was directed to a special master to take proof and report upon “claims against said railway company incurred for materials and supplies furnished it for its ordinary operation.” There was also a general order made in relation to intervening petitions.
The appellants Rosser & Coleman intervened by petition, and asserted claims as laborers and employes of said company to the amount of $2,-£06.86, which they contended constituted a lien upon the company’s property prior and superior to that of the debts due to and represented by the complainants. They allege in their original petition and the amendments thereto that from about March 5, 1890, until about April 14, 1890, they performed work and labor in construction and repair of the railway company’s road, on sections 74, 75, and 76 thereof, in Lee county, Ky., under a contract which was in substance as follows: That, having in their employ certain laborers, and owning carts, teams, and *243 tools suitable for the purpose, the railway company agreed to employ them, with their said laborers, tools, and teams, by the day, to do work on the aforesaid sections of its road, under the direction and control of its engineer; that they were to be paid certain sums per day for foremen, for laborers, and for teams, consisting of carts and mules, and 10 per cent, additional on the amount of said daily sums for the use of their tools, and for their superintendence of the work and hands, and be reimbursed the cost of powder necessary to be used in the work; that either party had the right to stop said work at the end of any day; that while the employment continued petitioners paid their said hands or laborers. It is then alleged that under this contract the railway company became indebted to petitioners in the sum of $2,806.66, for which it on October 15, 1890, executed to them its promissory note due at four months, which petitioners thereafter indorsed and negotiated to the Clay City National Bank, and at its maturity were required to take up, the maker having failed to pay the same. Petitioners claimed that under said contract they were laborers and employes of the railway company, and as such were entitled to a lien upon its property and the proceeds thereof for the amount due them, which was prior and superior to complainants’. Their petition was demurred to on the ground that it presented no case entitling them to the lien claimed. This demurrer was susT tained, and the petition dismissed. From this judgment said petitioners have appealed.
Their contention for a lien is based on an act of the legislature of Kentucky approved March 20, 1876, entitled “An act to provide for liens for laboring men and supply men,” which provided (section 1) that “ when the property or effects of any railroad company, or of any owner or operator of any rolling mill, foundry, or other manufacturing establishment, whether incorporated or not, shall be assign for the benefit of creditors, or shall come into the hands of any executor, administrator, commissioners, receiver of a court, trustee, assignee for the benefit of creditors, or shall in any wise come to be distributed among creditors, whether by operation of law or by the act of said company, owner, or operator, the employes of said company, owner, or operator in such business, and the persons who shall have supplied material or supplies for the carrying on of such business, shall have a lien upon so much of such property and effects as may have been embarked in such business, and all the accessories connected therewith, including the interest of said company, owner, or operator in the real estate used in carrying on said business.” By section 2 it is declared that “ the said lien shall be superior to the lien of any mortgage or other incumbrance heretofore or hereafter created, and shall be for the whole amount due such employes as such, or due for such materials or supplies,” etc. The third section provides for the pro rata distribution of the net earnings at the end of each ■calendar month among lien holders, when the trustees or other persons having the administration of such property “shall continue the operation of the business.” The fourth section provides that when the company, owner, or operator shall suspend, sell, or transfer such business, *244 or when the property or effects engaged in such business shall be taken in attachment or execution, so that the business shall be stopped or suspended, the said lien shall attach as fully as is provided by section 1, and in such case may be enforced, by proceedings in equity. The fifth section directs how the suit shall be brought, and- provides “that such suit shall be begun within sixty days after the right of action shall accrue.”
When this act was passed there was in force the prior statute of 1858, now chapter 70, Gen. St. Ky., which gives a person who performs labor or furnishes material in the erection, altering, or repairing a house, building, or other structure, or for the improvement in any manner of real estate by contract with or by the written consent of the owner, a lien thereon and upon the land on which such improvement may have been made: provided, the claimant, within 60 days after he ceases to labor or furnish material, files in the office of the clerk of the county court of the county in which such building or improvement is situated, a statement of the amount due him, with a description of the property intended to be covered by the lien, sufficiently accurate to identify it, and the name of the owner, and stating whether the materials were furnished or the labor performed by contract with the owner: and provided, further, that action shall have been brought to enforce the lien claimed within six months from the day of filing the account in the clerk’s office as aforesaid.
By an act of the Kentucky legislature approved March 27,1888, entitled “An act to create a lien on canals, railroads, and other public improvements in favor of persons furnishing labor or materials for the construction or improvement thereof, ” called the “ Contractors’ Act,” it is provided (section 1) “that all persons who perform labor, or who furnish labor, materials, or teams for the construction or improvement of any canal, railroad, turnpike, or other public improvement in this commonwealth by contract, express or implied, with the owner or owners thereof, shall have a lien thereon and upon the property and franchises of the owner or owners thereof for the full contract price of such labor, material, and teams so furnished or performed, -syhich said lien shall be prior and superior to all other liens theretofore or thereafter created thereon.” The third section declares that no lien provided for by the act shall attach unless the person who performs the labor or furnishes the material or teams shall, within 60 days after the last day of the last month in which the labor was performed or materials or teams were furnished,, file in the county clerk’s office a statement in writing, verified by affidavit, of his account or claim, substantially as required under the act of 1858; and by section 4 it is .provided that proceedings for the enforcement of such liens “must be begun within one year from the filing of the claims in the county clerk’s office, as required by the third section of this act.” These three acts comprise the legislation of the state upon the subject of statutory liens in favor of persons performing labor or furnishing material and supplies, and, under well-settled rules, should be construed together in their proper interpretation and application. When thus considered *245 it seems clear that they were intended to provide for three distinct classes; the act of 1858 covering the ordinary case of labor performed or material furnished in the erection, alteration, or repair of houses or buildings, or other improvement of real estate; the act of 1876 applying to the case of services rendered or supplies furnished in or for the carrying on of certain designated business occupations, when they suspend, or their property or effects pass by assignment, by operation of law, or by order of court into the hands of some trustee, commissioners, or receiver for administration and distribution among the creditors of the owner or owners thereof; and the act of 1888 embracing the case of labor performed, or materials or teams furnished, in the construction or improvement of certain works of a public or quasi public character. This latter act may properly be regarded as a legislative declaration that the prior statutes did not cover the case of labor performed or materials furnished in the construction or improvement of railroads. It was indeed decided by the supreme court of Kentucky, after the passage of the act of 1876, that neither under that statute, nor the general mechanic’s lien law of 1858, was there any lien against or upon a railroad for work performed thereon or materials furnished. Graham v. Coal Road Co., 14 Bush, 425. This denial of a lien upon railroads under the then existing statutes created the necessity for and led to the passage of said act of 1888.
It admits of little or no doubt that appellants’ petition presents a case within the purview of this latter act; their labor or that of the hands in their employ having been performed, and their teams having been furnished, in the construction and improvement of certain sections of the defendants’ railroad, which would have entitled them to a lien if they had complied with the requirements of said act in filing a statement of their claim in the proper clerk’s office for record, and bringing suit for the enforcement of the same within the time provided. They failed to allege any such compliance, and are clearly not entitled to any lien under either said act or that of 1858. Having lost their lien under said act of 1888, they now claim that they should be regarded as employes and laborers of the railway company, within the provision of section 1 of the act of 1876, and as such be given a priority of lien for the amount of their debts. This position cannot be sustained. If the act of 1876 has any application to labor performed in the construction or improvement of a railway, such as that set forth in the appellants’ petition, the lien would exist, not in their favor, but in favor of the laborers in their employ, who actually performed the service. But we think it very manifest that said act of 1876 has no reference to construction work such as appellants performed with their hands and teams. It has relation alone to-certain specified industries or enterprises as existing and established concerns engaged in carrying on business, and the lien therein provided for is given, not to the contractor who constructs the road or erects the plant, but to those persons, other than president, chief officer, director, or stockholder, who furnish materials or supplies, or render service in “the carrying on of such business.” The lien given such employes or furnishers of materials and supplies, in the contingency des *246 ignated, is' to be “ on the property and effects embarked in the business.” The persons in whose favor it is created are not required to file any notice or claim of lien, or take any preliminary steps as a prerequisite to the enforcement of such lien, which is more extensive in its operation than that conferred by either the act of 1858 or 1888. As well stated by the learned judge who decided the case in the lower court, “ it is clear that no lien is created at the time the labor is performed or the material furnished, but it only arises upon the stoppage or suspension of the business, either by the act of the party [owner] or by operation of law, and is given as a statutory preference in the distribution of the effects and assets of the business.” In other words, the act in its legal effect and operation provides that those who furnish material or render service as employes in carrying on the business of certain designated industries and enterprises shall, upon the stoppage or suspension of such concerns by operation of law, or act of the owner, have a prior lien upon all the owner’s property and effects embarked in such business for the amounts due them. The lien thus created by the act of 1876 is essentially different from that provided for by the general mechanic’s lien law of 1858, or by the contractors’ act of 1888. It arises or comes into existence upon the contingency of the insolvency, embarrassment, or discontinuance of the business which the employe or furnisher of supplies has assisted in carrying on, and attaches upon all the property and effects of the owner embarked therein, and applicable for distribution among creditors. Under the other acts.the lien arises upon the commencement of the work, or relates back to that time, if the requirement as to filing notices or statement thereof is complied with by the claimant. The acts of 1858 and 1888 apply respectively to eases of labor performed and material furnished in the erection or repair of houses, buildings, and other improvements on real estate, and in the construction or improvement of public or quasi public works, such as railroads, turnpikes, canals, etc.; while the act of 1876 applies to labor performed and material furnished in the operation of companies or concerns already built or constructed. The act of 1888 gives a lien for labor performed or material furnished in the construction of certain works of a public or quasi public character,—that is, in the establishment of such concern. The act of 1876 confers a lien for labor performed and supplies furnished in keeping such designated establishment a going concern. The manifest purpose of this act of 1876 was to provide such security to laborers and supply men as would induce them to continue established and going concerns in operation as long as possible. This construction harmonizes said acts, and presents a consistent system of legislation on the subject of statutory liens. It would be most anomalous to provide-a double lien. It cannot be assumed that the legislature intended that a contractor, who had failed or neglected to comply with the requirements of the act of 1888 in perfecting his lien, should nevertheless still have and be allowed to assert a more extended lien, under the act of 1876, upon all the property and effects of the owner embarked in the business. We think it clear that the appellants Rosser & Coleman should be re *247 garded as “contractors ” under the act of 18S8, and not as “ employes,” under and entitled to the benefit of the act of 1876. Neither the fact that their employment was a daily one, nor that their compensation was to he ascertained and settled by the method agreed upon, in any way affected or changed the character of their services, which were rendered as contractors. They cannot properly be regarded as “ employes ” and “laborers,” within the purview of the act of 1876.
In Vane v. Newcombe, 182 U. S. 220, 10 Sup. Ct. Rep. 60, the plaintiff having contracted with the company to erect certain telegraph wires on the compan3',,s poles, and furnished the labor of himself and others in doing the work, claimed a priority lien, under a statute of Indiana which gave a lien to employes of corporations. The supreme court said: “It seems clear to us that Vane was a contractor with the company, and not an employe, within the meaning of the statute. We think the distinction pointed out by the circuit court is a sound one, namely, that to he an employe, within the meaning of the statute, Vane must have been a servant, bound in some degree, at least, to the duties of a servant, and not, as he was, a mere contractor, bound only to produce or cause to be produced a certain result,—a result of labor, to be sure,—but free to dispose of his own time and personal efforts according to his pleasure, without responsibility to the other party.” The lien was accordingly denied; and in Railroad v. Wilson, 138 U. S. 501, 11 Sup. Ct. Rep. 405, it was said that an employe implies continuity of service, and excludes those employed for a special or single transaction. In construing the New Jersey statute, which gave laborers of corporations in case of an insolvency a lien upon corporate assets for the amount of wages due them, the supreme court of that state held that the right conferred was strictly personal, inhering alone in the person who" actually performs the labor or service, and that he who furnishes the labor or services of others under a contract to do the whole business of a corporation, or a particular branch of it, was neither within the letter nor spirit of the act. It was further held by said court that the wages, to be within the protection of the statute, must be due to a person in .the employ of the corporation at the time when it became insolvent; that only those in the employ of the corporation at the time of its insolvency were within either the words or policy of the statute. Delaware, L. & W. R. Co. v. Oxford Iron Co., 33 N. J. Eq. 196. We think the first of said propositions is the proper view to be taken of the act of 1876. Whether the last proposition of the New Jersey decision is correct, it is not necessary in this case to decide, as said appellants do not bring themselves within the provisions of said act. Our conclusion, therefore, is that the petition of Rosser & Coleman was properly dismissed.
The appeals of the supply claimants, W. & A. C. Semple, Fairbank, Morse & Co., and Andrew Cowan & Co., involved in record No. 29, heard with the case No. 22, depend upon the construction of the acts of 1876 and 1888 already considered. Said claimants severally furnished supplies and material to the railway company, suitable for either the construction of its unfinished line, or for carrying on the operations of *248 its finished portion. There was no contract, agreement, or understanding, express or implied, between the parties as to how the supplies furnished should be applied. A portion of them v'ere used and employed in the construction of the unfinished parts of the company’s road, and a portion were used in carrying on the company’s business, or in operating the finished part of its line. For such portion of the supplies so furnished as were used and applied in and towards the construction of the road, the claimants would undoubtedly have had a lien under the act of 1888 if they had filed the proper notice of their claim. They did not, however, comply with the requirements of said act, and now insist that they have a lien, under the provisions of the act of 1876, for the whole amount of their claims, without regard to how the supplies " were apportioned as between construction and the carrying on of the business of the company. So far as anything appears from the testimony, there was no breach of duty or bad faith on the part of the company or its officers in applying portions of the supplies and materials furnished to the construction of unfinished portions of the road. It was in fact left to the discretion of the company and its officers what disposition should be made of the supplies and materials furnished by the claimants, who made no inquiry and gave no directions as to how they were or should be used or applied. It was affirmatively shown by complainants that certain portions of the said supplies and material had actually been used in construction. The court below allowed a lien for such portion of the claims as were for supplies furnished and used for the operation of the railway or in carrying on its business upon and over its completed line, and denied the lien for such portion of the supplies or material as were used and applied in its construction, and for which a lien could have been maintained under the act of 1888. This action of the court is claimed to have been erroneous. No question is raised as to the correctness of the supply claimants’ debts as against the railway company. The controversy presented is between such supply men and the mortgagees, whose contract lien antedates the creation of the former’s claims. In this contest for priority we consider it well settled that the burden of proof is upon the claimants to establish whatever is necessary to confer a preference on their part. In Davis v. Alvord, 94 U. S. 545, it is said that those who assert a statutory lien upon real property, and claim priority over mortgagees and others who have acquired rights and interests in the property, must furnish strict proof of all that is essential to the creation of the lien. It is further said in that case that the court cannot presume, in the absence of proof, that the requirements of the statute have been complied with. Under no fair construction of the act of 1876 can it be asserted that the mere fact of furnishing articles or supplies, suitable or capable of being used in carrying on a designated business, without any understanding or agreement that they should be so applied, will of itself give the furnisher a lien upon all the property and effects embarked in such .business, without reference to their actual application. The object and purpose of the act, as already explained, as well as the language employed in conferring the *249 lien, require that the supplies should be furnished,—at any rate, be used,—“for the carrying on of such business.” If the complainants had not shown affirmatively that the rejected portions of the several claims were used and applied in and towards the construction of unfinished parts of the road, the burden would have still rested upon the claimants of establishing the fact, as against prior mortgages, that the supplies furnished were either purchased for or were actually used in carrying on the business of the railway company, so far as it was an established and going concern. We are not called upon in this case to determine the question whether, if supplies should be furnished for the express and understood purpose of carrying on the business of any of the designated companies, and should thereafter be diverted to other use by the purchasers, the furnishers would have a lien under the statute, for there was no agreement or understanding, express or implied, as to the specific purpose for which these supplies were furnished, or as to where they were to be used. Under such circumstances the furnisher claiming priority of lien has devolved upon him, at least, the duty of showing that the supplies were actually used for carrying on the business, in order to bring himself within the.meaning and intent of the act. The several claimants have failed to do this, so far as the rejected portions of their respective claims are concerned. The rejected items were used in construction. They were covered by the act of 1888, especially in the absence of any agreement or understanding that they should be applied in carrying on the business of the company. The furnishers could have asserted a lien for the same if they had complied with the provisions of that act. This they failed to do. The act of 1876 was not designed to give the same party a double lien, or an election as to which statute he would claim under. We think there was no error in the special master’s apportionment of the several claims, as between construction and operation. Nor was there any error in the lower court’s failure to give the. claimants judgment for their respective debts against the railway company. No such personal judgment was sought, nor properly involved in the proceeding. On the question of interest on such portion of these claims as were allowed, there has been no action on the part of the lower court in either allowing or disallowing such interest; hence there is nothing in this question for review in this court. Our conclusion on the appeals presented by record No. 29 is that there were no errors in the action of the lower court upon the claims of the several appellants, and the judgments of the lower court thereon are affirmed. Said cause No. 29 will be remanded to the circuit court for the district of Kentucky for further proceedings in the administration and distribution of the property, franchises, and effects of said railway company in conformity with the opinion of this court in respect to the aforesaid claims.