# CHARLESTON.

## G. C. RAWSON v. JONES-WINIFREDE COAL COMPANY.

(No. 5300.) ·

Submitted October 20, 1925.    Decided October 27, 1925.

1.  MASTER AND SERVANT—*Relation Question of Law on Undisputed Evidence.*

    Where the evidence of a contract and the acts performed under it is without substantial conflict, a question of law is presented to the court, and not a question of fact to the jury, whether the relation of master and servant, or that of principal and independent contractor, exists between the parties to the contract. (p. 265.)

    (Master and Servant, 39 C. J. § 1304.)

2.  SAME—*Independent Contractor Not Insurable Under Work-men's Compensation Act; "Employee."*

An independent contractor is not an employee as defined in chapter 15-P, section 9, Code, (Workmen's Compensation Act) and he is not insurable against personal injuries to himself by that act, while carrying out his independent contract.   (p. 269.)

(Workmen's Compensation Acts, C. J. § 42.)

3.  SAME—*Owner Not Precluded by Workmen's Compensation Act From Common-Law Defenses in Action for Injuries to Independent Contractor.*

In a suit by an independent contractor against the owner of the premises, for personal injuries received by the former while carrying out his independent contract on those premises, the cause of action being for negligence in not furnishing the independent contractor a safe place to work, the defendant is not precluded from his common law-defenses, by the Workmen's Compensation Act.   (p. 270.)

(Master and Servant, 39 C. J. § 1567.)

4.  MINES AND MINERALS—INDEPENDENT CONTRACTOR—*Independ-Contractor, Injured by Own Acts, Cannot Recover Against Mine Owner.*

An independent contractor who mines coal under his contract and receives personal injuries while carrying out his contract, caused by an unsafe condition in the mine brought about solely by his own acts, cannot recover for those injuries against the owner of the mine.   (p. 271.)

(Mines and Minerals, 27 Cyc. p. 784.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.)

Error to Circuit Court, Clay County.

Action by G. C. Rawson against the Jones-Winifrede Coal Company.   Judgment for plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*O. L. Hall* and *Eakle & Eakle,* for plaintiff in error.
*J. E. Springston,* for defendant in error.

LIVELY, PRESIDENT:

G. C. Rawson, plaintiff below, recovered a verdict and judgment of $1,000 against Jones-Winifrede Coal Company (here-

inafter called the (''Coal Company'') for personal injuries received in defendant's mine while working therein under a contract, and the Coal Company prosecutes error to this court.

The negligence charged to the Coal Company is that it did not provide plaintiff a safe place to work, and did not employ a mine foreman to inspect the mining operation and keep it free from hazard to those employed therein. It is charged and admitted that defendant Coal Company did not contribute to the Workmen's Compensation fund at the time of the injury.

The defense to the action is that plaintiff was not an employee of defendant; that the relation of master and servant did not exist; that he was an independent contractor; that the injury was the result of plaintiff's method of performing the contract, and no negligence is imputable to defendant.

It appears from the evidence that the Coal Company had ceased to operate the mine. The cost of production and marketing was greater than the market price of coal, hence the mine was shut down. The miners were out of work and had begun to ''scatter.'' A minimum charge for electrical power amounting to $262.50 was accruing monthly against the Coal Company whether the power was or was not used. While this condition of idleness was existent a verbal contract was entered into between plaintiff, George and Andy O'Dell, and Danny Igo on the one hand, and W. S. Jones, defendant's superintendent, on the other, by which plaintiff and his co-contractors were to mine and deliver coal from the mine at the tipple where it was received by defendant, and for which it was to pay $1.25 for every ton so delivered. The equipment on hand and for use in the mine, such as machinery, power, ponies, mine rails and mine props, was turned over to plaintiff and his associates. Nothing was said as to when the contract should begin or end. There is no substantial conflict as to the terms of the contract, except Jones says it was agreed that plaintiffs and his associates should assume all responsibility in getting out the coal, while plaintiff and his co-contractors deny any such express stipulation. Defendant never exercised any control over the work except to see that the mine was ''kept on centers,'' and to see that ''they didn't

ruin our acreage''. There were no other workmen in the mine except plaintiff and his associate contractors and two men employed by them whom they paid out of the money derived from their contract. They began mining the coal on the day following the making of the contract. Danny Igo worked one day and then quit, giving as a reason therefor that he did not think it was safe to work in the mine unless the draw-slate was removed as the coal was taken out. The main entry at the time of the contract had been driven in about 100 feet, and a side entry leading off from the main entry had been started and driven about 10 or 12 feet when the mine was closed down. The draw-slate (the slate between the coal and the rock roof) was thick and heavy and the Coal Company had always taken the slate down and removed it from the mine. None was left in the main entry, and it is reasonably clear that none was left overhead in the side entry or room which had been driven 10 or 12 feet from the main entry. Plaintiff had served in the capacity of mine foreman just before the mine shut down, and had required the draw-slate to be taken down and removed. He is not sure that such were his instructions from Jones, the superintendent, but he testified that he had done it as mine foreman. Plaintiff and his associates began at the side entry and worked for about 30 days (except Danny Igo who quit after the first day's work), and had driven in about 35 or 40 feet further, when the accident occurred from which plaintiff suffered his injuries. He was operating the cutting machine and was standing eight or nine feet from the face of the coal when the draw-slate overhead fell and injured him. It appears that the contractors did not take down the draw-slate as they took out the coal, but attempted to keep it in place by mine props. It was for this reason that Danny Igo quit. He regarded it as dangerous. Plaintiff does not give any reason for changing his former policy of removing the slate while he acted as mine foreman to that of leaving it overhead while he worked as contractor. He does say that more coal could be mined by propping the slate, instead of removing it. Andy O'Dell, a co-contractor and a witness for the plaintiff, says he supposed

the reason for its non-removal was because it would be cheaper to mine the coal without taking the draw-slate down.

The question of primary importance is whether or not the status of the plaintiff at the time he received his injuries, was that of an independent contractor, or that of an employee of the defendant. The answer to this question depends in a large measure upon a consideration of the contract, the nature of the business and the surrounding circumstances. Generally where one has contracted with a competent person, exercising an independent employment, to do work not in itself dangerous to others, according to the contractor's own method and without his being subject to control in an important particular, except as to the result of his work, the person so performing the work assumes the status of an independent contractor. *Carrico* v. *West Virginia C. & P. Ry. Co.*, 39 W. Va. 86; *A. L. Kirkhart* v. *United Fuel Gas Co.*, 86 W. Va. 79; *Waldron* v. *Coal Co.*, 89 W. Va. 426; *Smith* v. *Coal Co.*, 92 W. Va. 253.

The plaintiff relies upon the case of *Waldron* v. *Coal Co.*, *supra*, as deciding the question, and quotes from that case as follows:

"Whether a person performing work for another is an independent contractor, depends on the consideration of the contract of employment, the nature of the business, the circumstances under which the contract was made and the work was done. And if it appears that the owner of the business retains general control of the premises where the work is being performed, and has power to direct when it shall be performed, furnishes part of the equipment, does a portion of the work himself necessary for the continuance of the work to be done under the contract, pays the contractee a stipulated price per square yard of the work performed, and there is no fixed time for the termination of the contract, the relation of independent contractor is not established; although the contractee under such contract employs and discharges his employees on the work, and pays them out of the money he derives from the contract."

It is contended that the status of the plaintiff was not that of an independent contractor, because there were no time for

the termination of the contract; there was no certain distance that the drift or room should be driven; there was no specific number of tons of coal to be mined under the contract, and the defendant did a portion of the work, namely, dumped the coal from the tipple, in order to empty the mine cars to be returned to the mine so the work could proceed. It is further argued that the defendant retained control over the work, because, having the contract with the Hartland Power Company to furnish power to the mine, the defendant, and the defendant alone, controlled the electric power to operate the coal cutting machine; and also, according to the testimony of W. S. Jones, the defendant's superintendent, a certain degree of control was retained, in that the Company saw that the mine was kept "on centers" and developed in accordance with a map kept on file in defendant's office, which Jones showed to George O'Dell (who knew very little about engineering) when he came to confer with the former in regard to where to "turn a place off," and showed him the way it should be done, in order to prevent ruining the "acreage".

The facts in the instant case while possessing certain features analagous to those existing in *Waldron* v. *Coal Company, supra,* are readily distinguishable therefrom. There defendant had general control of the mine and of all the work therein. An important part of the work on the heading was done by defendant. It drilled the holes in the daytime, and Thompson (the alleged independent contractor) shot them by explosives at night. "It sent Blaine, its employee, into the mine to help with the pony; and the evidence points strongly to the fact that the boy (who was killed) was sent the first night by someone in authority for that purpose. No time was fixed for the termination of the contract, and the life of the contract evidently depended upon the co-operation of defendant. If the holes were not bored, the work would not proceed. The mining of coal was the controlling business; and the driving of the entry subservient thereto, and subject to the convenience of the owner. . . .. Thompson, when asked if he had absolute control over driving the entry replied that he was under the mine foreman's instructions; but that he had absolute control of hauling the slate out of the

mine, employing and discharging the men, buying the explosives, and everything of that kind, until 'they' gave him further orders and 'they didn't give me no further contrary orders about that'.'' The Company reserved the right to give Thompson further orders. And again, Thompson recognized some authority in the selection of workmen.

In the case at bar, the mine to which the contract was applicable had been shut down. All the work carried on therein was being done by plaintiff and his two co-contractors and their two employees. The defendant simply received the coal after it had been delivered at its tipple. The defendant did not have general control of the mine. It reserved only the right to see that the mine was kept "on centers" in accordance with its map. It had nothing to do with the production of the coal and the manner in which the work was performed. The plaintiff and his co-contractors did not recognize any authority in defendant in the selection of, or wages to be paid, their workmen. They had the right to hire and discharge their employees as they saw fit.

The fact that no time was fixed for the termination of the contract, that no specific number of tons of coal was to be mined under the agreement, that the workmen of the co-contractors were paid by defendant out of money due the contractors, by the latters' direction, and some of the other circumstances already mentioned, such as the furnishing of electric power and mine equipment, are not necessarily controlling. Each case must be determined on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Schneider on Workmen's Compensation Laws, Sec. 37, page 160. Upon a consideration of the contract, the nature of the work, the circumstances under which the contract was made, and the way in which the work was done, it is clear that the status of the plaintiff was that of an independent contractor; and the court below should have reached this conclusion as a matter of law, and not submitted it to the jury. ''Where, from the evidence, it is to be determined whether or not one is an independent contractor, and the evidence is so conflicting as to support a finding of the jury, then it is purely a question for their deter-

mination, but if the evidence is without conflict, it then becomes a question of law as to whether or not an independent employment has been established''. *Anderson* v. *Tug River Coal & Coke Co.*, 59 W. Va. 301. See also 14 R. C. L. page 79, Sec. 17.

There remains to be considered the question as to whether the plaintiff's injuries were received by reason of defendant's neglect to perform a, duty owing by it to the plaintiff. In this connection it will be noted that the Workmen's Compensation Act, as set out in Chap. 15 P, Code, has no application to an independent contractor insofar as his being an employee is concerned, because he is not an ''employee'' within the meaning of that act. ''The term, as there used, means an employee who is injured in the course of, and as a result of his employment, and one who, under the common law principles of master and servant, could have 'maintained an action against his employer.'' *Cox* v. *Coal & Coke Co.*, 80 W. Va. 295; *Smith* v. *Coal Co.*, 92 W. Va. 253. ''Whether one is an employee or an independent contractor is often a close question and one of importance, because independent contractors are not entitled to compensation benefits from their principals, as they are not generally covered by the compensation acts, except, if at all, in the capacity of employers.'' Schneider on Workmen's Compensation Laws, Sec. 66, page 208. Under our Workmen's Compensation law the independent contractor is required to carry on his payroll the names of the employees of any sub-contractor to whom he has let any portion of the work, and pay the premiums on their wages. Sec. 9, Chap. 15-P, Code. The Workmen's Compensation law not being designed to protect an independent contractor, and affording no protection for injuries sustained by him while carrying on his own work, that act has no application as between the parties hereto, and defendant Company is not deprived of the common law defenses to the suit. What duty did defendant owe to this independent contractor? He was nothing more than an invitee upon the property. Under the mining law a mine foreman was not required even if defendant itself was carrying on the operation and was responsible for the safety of its employees while the work progressed; for unless there are at

least ten persons working in the mine, a mine foreman is not required. Code, Chap. 15-H, Sec. 36e (5). Five or more men must be employed in a mine before the mine law applies.

If the premises were in a dangerous condition when plaintiff took charge and by reason thereof the personal injuries were sustained, and the contractor or his employees did not have notice thereof and were not guilty of contributory negligence as the proximate cause, then recovery might be had. The owner cannot set a death trap and invite a contractor to enter it, and escape liability. The premises must be in a reasonably safe condition. But we have no such situation here. Plaintiff's method of taking out the coal, without taking down the drawslate, rendered the place dangerous and caused the injury. It is true that, "A mine owner, who, for some benefit to himself, procures the working of his mine, even by an independent contract, and therefore impliedly invites such contractor and his employees to enter and use such mining premises, is liable to them for personal injuries resulting from any condition of the premises which is inherently dangerous, if the owner had knowledge or notice of such condition and the contractor or his employees had not". *Conners-Weyman Steel Co.* v. *Kilgore*, 189 Ala. 643, 66 So. 609. Yet "the duty which the owner owed to the employees of the contractor [and there would be no greater duty owing to the contractor himself] to keep its mine in a reasonably safe condition extended only to conditions existing when the mine was turned over to the contractor for mining, and not conditions arising out of changes caused by the progress of the work the contractor undertook to do". *United States Cast Iron Pipe & Foundry Co.* v. *Fuller*, 102 So. (Ala.). 25. The mine was in a reasonably safe condition when turned over to the plaintiff and his co-contractors, and the defendants' duty to plaintiff as an invitee did not extend to protecting him from conditions arising out of changes caused by the progress of the work he undertook to do.

The theory on which the case was tried and the verdict sustained, was that the relation of master and servant existed between the parties, and that the master had not furnished a safe place to work, and although plaintiff knew the danger,

or ought to have known it, his own negligence would not bar him, because defendant could not interpose that defense. The declaration presents this theory, but the evidence does not sustain it. No negligence on the part of defendant on which a recovery can be based is perceived; and the peremptory instruction to find for defendant should have been given. The judgment will be reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*