## Katz et al. v. Scott.

(Decided May 31, 1929.)

HARMAN, FRANCIS & HOBSON for appellants.

W. K. STEELE, and E. J. PICKLESIMER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The Ozark Stave Company is a corporation engaged in the wholesale handling of barrel staves and heading, with its principal office in Chicago, Ill. Herman Katz was and is its chief stockholder; all the other stock being held by members of his family so as to enable the corporation to be formed. The transactions involved in this litigation were for some reasons negotiated and executed on behalf of the corporation in the name of "H. Katz, trustee," but the corporation was the real party in interest, and we will hereinafter refer to both it and the trustee by the designation of "appellants."

On and prior to January 14, 1927, appellants owned in Pike county 2,627 white oak trees that they had purchased from the owner of the land upon which they stood, and on that day they sold them by a writing duly executed to W. T. Reynolds for a deferred consideration

of $10,000, evidenced by note due twelve months thereafter, with interest from maturity. Reynolds was to manufacture the timber in the trees into barrel staves and heading, and appellants agreed to pay him therefor, f. o. b. cars at either Pikeville or Stone, in Pike county, stipulated prices according to grade, the highest being $400 per thousand, but which was afterwards increased by agreement to $475. Appellants also agreed to, and did furnish some of the necessary equipment for the mill or factory at which the staves and heading were to be made, and to make advancements to Reynolds while the timber was being worked in reasonable amounts as required by him. Pursuant thereto Reynolds provided himself with the necessary mill, and with the parts furnished by appellants it was duly equipped and erected on the land where the trees stood. On February 17, 1927, Reynolds contracted with appellee and plaintiff below, Earl & John Scott, a corporation, to cut the trees and deliver them to designated places in prescribed condition, and to pay it therefor at the rate of $11 per thousand feet, and it immediately began that work, and continued to do so until August, 1927, at which time it had cut and delivered, according to its contract, 704,108 feet of the timber for which it was due under its contract, $7,745.18, and there had been paid to it only the sum of $3,000, leaving a balance due it of $4,745.18. The timber cut by plaintiff was all, or practically all, manufactured by Reynolds into staves and heading, as he had agreed to do under his contract with appellants; but by far the larger portion of it had not been shipped by him to them, and in the meantime they advanced to him an additional sum of $10,000, which, with the purchase price of the trees, made him indebted to them in the total sum of $20,000, subject to a small credit for the price of staves and heading he had theretofore shipped to them. At that time the credit of Reynolds was gone, and he was evidently insolvent, and was making urgent requests of appellants for additional advancements, when they sent from the Chicago office Dave Katz, a brother of Herman Katz, and a Mr. McGlynn to Pike county to ascertain the actual conditions, and, if possible, to effect a settlement.

After thorough inspection and investigation of the affairs of Reynolds, the latter in the early forenoon of August 24, 1927, by a written contract, sold to appellants

all of the undelivered manufactured timber (which was specified in the writing), and they took possession of it. On the afternoon of that day plaintiff (Earl and John Scott) filed this action in the Pike circuit court against Reynolds to recover the balance of its debt for cutting the timber; and it averred grounds for and procured an attachment which was levied on all of the property of Reynolds, including that which he had sold to appellants. On September 1, thereafter plaintiff filed an amended petition setting up for the first time the sale made to appellants, and alleged therein that it was a fraudulent preference under section 1910 of our present Statutes, commonly know as the statute of 1856, but it did not by that pleading bring appellants into the case or seek personal judgment against them, and they, on November 14, 1927, filed their intervening petition, in which they made some denials of averments contained in plaintiff's pleadings and set up their debt growing out of the facts hereinbefore stated and its satisfaction by the sale to them. Other pleadings were filed by plaintiff, in one of which it attempted to assert against the property sold to appellants by Reynolds the statutory lien provided by section 2487 of our present Statutes, and following ones in favor of *employees* against manufacturing establishments, and other engagements therein mentioned, for unpaid *wages* for a prescribed time before insolvency, or before the property of such establishments should "come to be distributed among creditors" through any of the enumerated methods contained in the statute.

In plaintiff's reply to appellant's intervening pleading it alleged that they, as a part of the consideration for the contract with Reynolds to purchase the staves, etc., agreed to assume and to pay the debt of plaintiff, which in the meantime had been reduced to judgment against Reynolds, and plaintiff prayed for personal judgment therefor against appellants. Proper pleadings made the issues and the case by agreement was transferred to equity, and upon final submission the court adjudged that plaintiff was entitled to the statutory lien asserted by it, and directed the property to be sold to satisfy it, and that plaintiff be first paid its debt, interest, and costs out of the proceeds. The court also found that appellants agreed with Reynolds to pay plaintiff's debt as a part of the consideration for its purchase of the manufac-

tured timber from him, and gave plaintiff a personal judgment against appellants for the amount of its debt, interest, and costs, but no attachment lien was attempted to be enforced by the judgment. Appellants prosecute this appeal, and by counsel complains: (1) That the court erred in adjudging plaintiff entitled to the statutory lien invoked by it; and (2) that it also erred in sustaining the alleged agreement by appellants to pay plaintiff's debt and in rendering personal judgment therefor against them. We will dispose of the two complaints in the order named.

The lien given by the relied on statute (section 2487) is expressly confined to "employees," and the following sections expressly or by clear implication state that it is the "wages" of such employees that is protected by the lien. We will not insert any of the sections herein for the purpose of establishing those facts, since it may be done by reading the sections themselves. That being true, the real question presented under this complaint 1 is: Whether plaintiff was an *employee* so as to be entitled to the lien within the contemplation of the statute creating it? The invoked lien is provided for by article 3 of chapter 79 of the 1922 Edition of Carroll's Kentucky Statutes, and other articles of the same chapter create liens in favor of employees, which by express enactment are made to include any independent contractor performing any part of the work necessary to the completion of the undertaking in which the labor was performed, and also in favor of the furnisher of any material necessary therefor, and which is true as to the lien given by section 2463 for the furnishing of material and labor in the construction of any building or structure, the one given by section 2480 being in favor of employees and others working on "water craft"; but the lien herein sought to be asserted as provided for by section 2487 is, as we have seen, expressly confined to *employees* and to secure their *wages* only.

Under the other sections referred to, we have frequently and universally construed the statute as applying to, and for the benefit of, independent contractors, the furnishers of any material, and other indebtedness incurred in the prosecution of the undertaking, as well as that of wages due employees. It would therefore appear from a consideration of the terms of the statute, independently of precedent, that the lien herein contended

for (that provided by section 2487) was intended by the Legislature to be limited only to *wages* of *employees,* and not to include amounts due independent contractors for services and material furnished in carrying out their contract.

The distinction between employees and independent contractors has been pointed out frequently by this court. Some of the later cases in which it was done are, White v. Olive Hill Fire Brick Co., 169 Ky. 834, 185 S. W. 107; Borderland Coal Co. v. Burchett, 193 Ky. 602, 237 S. W. 663; Diamond Block Coal Co. v. Sparks, 209 Ky. 73, 272 S. W. 31; Dempster Construction Co. v. Tackett, 215 Ky. 461, 285 S. W. 191; Messmer v. Bell & Coggeshall, 133 Ky. 19, 117 S. W. 346, 19 Ann. Cas. 1, and others referred to in those opinions, and from them it readily will be seen that plaintiff was an independent contractor in this case.

Section 4880 of our present Statutes (being the first one in our Workmen's Compensation Act) confines its benefits to "employees," and in numerous cases, among which is the Sparks Case, supra, we have construed that section as not applying to an independent contractor or his employees, and which is quite persuasive of the correct interpretation that should be put upon section 2487, supra, under which the lien here invoked is attempted to be asserted. The identical question was before the federal Circuit Court of Appeals for the Sixth Circuit in the case of Tod v. Kentucky Union Railroad Co., 52 F. 241, 3 C. C. A. 60, 18 L. R. A. 305. Circuit Judge Jackson, who was later an Associate Justice of the Supreme Court, wrote the opinion in that case, in which it was held, without dissent from any member, that the lien created by section 2487, supra, was not for the benefit of an independent contractor, as we have found plaintiff was in this case, but that it was one exclusively for the benefit of the *employees* of the insolvent operator of the manufacturing establishment (or other undertaking set out in the statute), and existed only as security for their unpaid *wages.* A number of cases from other jurisdictions, and some from this one, are referred to in that opinion, but which will not be catalogued here. The reasoning of that court is most convincing, and it is not attempted to be met or refuted by counsel for plaintiff in this case.

The question is thoroughly discussed in the annotations to the case of Rawson v. Jones-Winifrede Coal Co., a West Virginia Case, reported in 100 W. Va. 263, 130 S. E. 492, 43 A. L. R. 330, beginning on page 335 of the latter publication under the heading "Independence of contract considered with relation to the scope and construction of statutes." Of course, it is therein recognized that the determination of the question is always governed by the phraseology of the particular statute giving the lien, or, in other words, from the construction of the language employed in the statute. But, where the terms of the statute do not expressly or by clear implication include independent contrators, they are excluded from the benefit of the lien created thereby. It is so stated in the annotation referred to on page 340 of 43 A. L. R., wherein it is said: "The inapplicability of these statutes to independent contractors has been frequently affirmed." In note 1 to that excerpt, cases are cited in support thereof from the courts of a number of states in the Union and also from English courts. Some of them involve statutes covering the identical statutory lien now under consideration, among which is the case of Re Barr-Dinwiddie Printing & Bookbinding Co., a New Jersey case reported in (N. J. Ch.) 42 A. 575, in which it was held that, the prior lien upon the assets of an insolvent corporation extended by the New Jersey Corporation Act, section 63, to "laborers," does not include the claim of other corporations for an amount due for work done under an independent contract. To the same effect is the case of Aikin v. Wasson, 24 N. Y. 482, and a number of others contained in that note. Persuasively sustaining cases are Producers' Coal Co. of Kentucky v. Barnaby, 210 Ky. 244, 275 S. W. 625, Turner v. Randolph, 213 Ky. 55, 280 S. W. 462, and Freeman v. Craft, 220 Ky. 15, 294 S. W. 822. We therefore conclude that the court erred in adjudging and in enforcing a lien under section 2487, supra, of the Statutes, in favor of plaintiff, and this complaint must therefore be sustained.

We are not unmindful of the rule of practice prevailing in this court as to the weight to be given finding of facts by a chancellor in equity cases. Under it such finding will not be disturbed, if the mind is left in doubt as to the truth; but, if it is against the preponderance of the evidence, and all of it together shows with reasonable clearness that the trial court was in error in that

regard, then this court will set aside its finding of fact and direct what judgment should be rendered. In this case Reynolds, and one of the Scotts (the only one who gave evidence in the case), testified that it was a part of the contract of August 24, 1927, under which Reynolds sold the material to appellants, that the latter did assume and agree to pay plaintiff's debt; but it was proven that, in subsequent statements made by the same two persons, they clearly indicated to the contrary, and which statements it is not necessary for us to repeat in this opinion. Dave Katz, who effected the sale for appellants and McGlynn, to a large extent, positively contradicted the testimony of Reynolds and Scott, and both of them denied any such agreement as that testified to by plaintiff's witnesses. If there were no other testimony or circumstances in the case, under the rule, supra, we would be inclined to adopt the finding of the trial court as conclusive, but there are proven circumstances and facts in the record which are quite convincing that no such agreement was ever made. In the first place, it was patent, as subsequent events demonstrated, that the value of the property purchased by appellants, under the involved contract of August 24, 1927, was very much less than the amount of the balance of appellants' debt owing to it by Reynolds, and one seeking to collect that debt would, in the very nature of things, hesitate to assume the payment of an additional sum amounting to practically $5,000. Moreover, the burden to establish such a contract was upon plaintiff, since it was thereby attempting to incorporate in the written contract something that it did not contain, but which it had the right to do in an effort to show the true consideration for the contract.

Another circumstance militating against plaintiff's contention is the fact that it waited for several months, and until appellants interpleaded in the cause, before making any mention of the alleged contract. In the meantime plaintiff had obtained knowledge of the written contract of sale, and in one of its pleadings it relied upon a fraudulent preference so as to work an assignment of the property of Reynolds for the benefit of all of his creditors, but it did not mention in that pleading the fact that appellants had assumed the payment of its debt, notwithstanding its agents and stockholders were in daily contact with Reynolds, and did or could have ascer-

746

tained that fact, if it was one. Instead of at once pleading such assumption, plaintiff waited until the proverbial "eleventh hour" before attempting to rely on it, and in the meantime it employed proceedings for the obtention of other relief whereby it might secure its debt by the lien it attempted to invoke, or to share in the equal distribution of the proceeds of the property bought by appellants under the written contract with Reynolds of August 24, 1927.

It is shown in the record that appellants had an agent upon the ground in Pike county upon whom summons could be served, and nothing appears in the record to show that they were insolvent. So that plaintiff could have filed the action at the beginning against appellants, but, instead of doing so, it waited until the latter intervened before any mention was made of any assumption by them of its debt. Such conduct, and the other proven facts and circumstances in the case, convince us that the clear preponderance of the evidence refuted plaintiff's contention of the assumption of its debt by appellants, and that the court erred in so adjudging. The relief that should have been adjudged was a pro rata of the proceeds of the attached property, including that sold to appellants, among the creditors of Reynolds, upon the theory that the sale by him to them operated as an assignment at that time for the benefit of his creditors, and the court erred in not so adjudging.

Wherefore, for the reasons indicated, the judgment is reversed, with directions to set it aside and render one consistent with the principles of this opinion.