WARREN A. CATHERMAN *v.* BENJAMIN H. B.
ENNIS, JR., ET AL.
[No. 19, January Term, 1933.]

*Decided April 6th, 1933.*

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Murray MacNabb,* with whom was *Charles G. Baldwin*
on the brief, for the appellant.

*Walter L. Clark, Roszel C. Thomsen,* and *Clater W. Smith,* submitting on brief, for the appellees.

PATTISON, J., delivered the opinion of the Court.

The claimant in this case has appealed from a judgment of the Superior Court of Baltimore City reversing an award of the State Industrial Accident Commission. In the trial of the case, the following issues were submitted to the jury:

"(1) Did the claimant receive any injury on or about November 7th, 1931, which arose out of and in the course of his employment by Benjamin H. B. Ennis, Jr.?

"(2) Did the claimant receive an injury on or about November 7th, 1931, which was accidental in its nature?"

At the conclusion of the evidence heard on these issues, the appellants in the trial court asked for the two following instructions, known as A and B prayers.

(1) A prayer—that there was no evidence legally sufficient to prove that the claimant received an injury which arose out of and in the course of his employment, and "therefore, the answer of the jury to the first issue shall be 'No.'"

(2) B prayer—that there was no evidence legally sufficient to prove that the claimant received an injury which was accidental in its nature, and "therefore, the answer of the jury to the second issue shall be 'No.'"

The court granted the B prayer, but took no action on the A prayer.

The appellee in that court offered the following prayer: "That the burden of proof in cases arising under chapter 800 of the Acts of the General Assembly of Maryland of 1914 and the Amendments thereto (Workmen's Compensation Act) is upon the employee to show that he sustained an accidental personal injury, arising out of and in the course of his employment, and unless the employee so proves, compensation cannot be awarded to him; but in court proceedings, upon appeal from a decision of the commission, the decision is to be held prima facie correct, and the burden of proof is upon the party attacking it."

The evidence discloses that the claimant, Warren A. Catherman, was in the employment of the appellee Benjamin H. B. Ennis, Jr. The claimant described his work as "everything that came along, floors, anything at all." On the day of the alleged accident, he "was on the floor, with steel wool following up the floor scrapers. * * * In the afternoon my right knee started to hurt me and it kept getting worse and in the evening at quitting time I called up Mr. Ennis over the telephone. It kept hurting me off and on until the time that I was taken down, and it didn't hurt me enough to call a doctor until the 7th of November." When asked, "What injury did you have to your knee that caused it to hurt you?" he said, "Why, it was wore through—there was a crack there," which he said came from the work he was doing from being constantly on his knees; "I wasn't used to being on the floor and to help out I got on the floor with this steel wool." "Q. Did it occur suddenly or over a course of time? A. Well, it started to hurt that day. Q. On the 24th (October)? A. Yes. * * * That was the last day I worked on the floor."

When asked if he had any direct blow or injury to the knee, other than rubbing it on the floor, the claimant said: "Not that I can recall. Q. Did you get anything in your knee—was the skin broken? A. Yes. Q. What caused that to break? A. On the floor. Q. Just by rubbing it? A. I could have bumped it. Q. Do you remember bumping it any time? A. No, I don't. Q. And do you know when it first started? A. On the 24th (October). Q. Just tell us what it looked like? A. It was wore clean off and a crack there. Q. You mean the skin was wore clean off and a crack in the skin? A. Yes, sir, and it burned me like fire. You can see on my knee where it started—the effect of it."

Claimant then testified that he had worked up to that time, but had been disabled ever since November 7th, although he was now getting better.

Dr. Billups, his physician, testified that he was called to see the claimant on the 8th of November. "He had had a

chill that night and I found him running a temperature of 102, complaining about his right knee. On examination I found one crack in the skin of about an inch long and several other very small ones very tender to the touch and swollen." When asked what caused this skin to crack, he replied: "Well, so many things that might cause the skin to crack—it would be right difficult to say. Must have been some irritation of some kind to cause it to crack. * * * He told me he was working on floors. Q. Doctor, can you say whether that was a sudden occurrence or came on gradually? A. Well it looked like it might have been an abrupt thing. Q. Find any foreign body? A. Yes, but it was so small I could not make out the nature."

The doctor then said that the claimant's fever was caused by an infection which started in his knee. Dr. Billups had been attending the patient since the time he was first called in. He was now improving, and he thought he would get all right. "He had quite a severe illness; that leg became badly involved and he had quite an operation and now he has an area of four or five inches long and about three inches wide that the skin has to form over. It is going to take six or eight weeks before he can do anything." The doctor said that the claimant told him that his leg started to hurt him about two weeks before he first called the doctor, "but he didn't pay any great attention to it because he was able to get around. He said he had been doing this work on the floor and thought he had gotten some steel wool in the knee and then he went down suddenly with this chill and fever."

Upon cross-examination, the doctor, in answer to a question propounded him, said: "That crack looked like it might have been an abrupt thing. It is awfully difficult to say about those things. * * * It looked fresh to me. I can't say how long it had been there. * * * I would say it happened quickly. Q. Why would you say that? A. On account of the appearance of it. It didn't look like something that had worn through. It was too well defined for that."

The doctor thought the infection started in the large crack. When asked what he thought caused the smaller cracks, his

reply was: "I suppose his work." The crack, he said, would not cause the knee to swell; it was not that kind of a crack.

The appellants in the trial court offered no evidence.

It is contended by the claimant, the appellant in this court, that the trial court erred in granting the employer's and insurer's B prayer, directing a verdict for them. This contention is based upon the provision of article 101, sec. 56, of the Code, in which it is said: "In all court proceedings under or pursuant · to this article, the decision of the Commission shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same." And, in further support of his contention, he quotes from *Jewel Tea Co. v. Weber,* 132 Md. 182, 103 A. 476, 477, where it is said: "By the express terms of the statute the burden is placed upon the appellant to show error in the decision of the commission, which must be taken on appeal as *prima facie* correct."

In reply to this contention, the appellees "admit that where there is any evidence to support the award of the commission the case must go to the jury, with the burden of proof on the employer and insurer. But where there is no evidence to prove an essential element of his case, the award of the commission cannot take the place of such evidence. The statute provides that the court on appeal 'shall determine whether the commission has justly considered all the facts concerning injury, whether it has exceeded the powers granted it by the article, whether it has misconstrued the law and facts applicable in the case decided.' Code, art. 101, sec. 56. If there is no evidence that an injury is accidental in its nature, the commission is without power to make an award, and the courts must be free to strike down, as a matter of law, an award which is not supported by any evidence."

And, in support of this statement of the law, the appellees here cite *Beyer v. Decker,* 159 Md. 289, 150 A. 804; *Gunter v. Sharp & Dohme,* 159 Md. 438, 151 A. 134; and *Barnes v. Myers,* 163 Md. 206, 161 A. 279.

In *Beyer v. Decker, supra,* this court said: "The claimant, on appeal, objects that the trial court could not properly, under the decisions of this court, direct a verdict as it did,

contrary to the decision of the commission, inasmuch as the statute, section ·56, requires that the decision of the commission shall on appeal be taken as *prima facie* correct. But when the facts are undisputed, as here, the only remaining question, that of the effect of the act on such a state of facts, is one of statutory construction, and one of law for the court; and no presumption could control the conclusion as to the meaning of the statute."

This court, in *Gunter v. Sharp & Dohme, supra,* said: "But when all the evidence in the case, together with the natural and reasonable inferences therefrom, upon which the claimant depends, is to the indisputable effect that the disease complained of did not arise out of and in the course of his employment, but can only be ascribed, if at all, to the inherent nature and probable course of his employment, without any supervening accidental injury as its cause, the question is one of law, because the only authority to award compensation is under an act of the legislature, and neither the commission nor this court can extend the operations of the law beyond the scope of the act."

In the later case of *Barnes v. Myers, supra,* this court said: "The facts stated were all adduced from witnesses called by the claimant, and are uncontroverted, and the question to be answered upon this settled state of facts, What legal principles apply to persons standing in that given situation? was a question of law. 'The terms and manner of employment were, of course, matters of fact for the jury; it being for the court to declare the legal relation that existed between the parties, upon any given state of facts.' *Deford v. State, use of Keyser,* 30 Md. 179, 204; *Hygiea Ice Co. v. Schaeffer,* 152 Md. 231, 235, 136 A. 548; *Rawson v. Jones-Winifrede Co.,* 100 W. Va. 263, 130 S. E. 492. The terms and manner of employment being settled for the court in this instance, there was no issue of fact to be answered by a jury; it was for the court to declare the resulting relation. This must be so in a proceeding in which a reversal or modification of the commission's order is sought, as well as in any ordinary civil proceeding, for even though by the provision

in section 56 the decision of the commission is taken as *prima facie* correct, with the burden of proof cast upon the party attacking it, that decision cannot have an effect to change in any degree the legal principles which bear upon a settled, undisputed situation. There can be no such thing as a burden of proving legal principles."

The three cases cited by the appellees differ from the one under consideration. The question in *Beyer v. Decker, supra,* was whether the work described in the undisputed evidence was intended to be included within the statutory class "of 'agricultural service, or service incidental to or in connection with agricultural pursuits and developments.'" In *Gunter v. Sharp & Dohme, supra,* the question was whether the disability complained of was the result of an accidental personal injury or under the testimony was an occupational disease. In *Barnes v. Myers,* the question was whether, upon the undisputed evidence in the case, the claimant was an employee at the time of the injury sustained by him. These were all questions involving the construction of the act, and were therefore questions of law to be determined by the court, and not questions of fact to be decided by the jury. As said by Chief Judge Bond in *Barnes v. Myers, supra,* the decision of the commission cannot "have an effect to change in any degree the legal principles which bear upon a settled, undisputed situation. There can be no such thing as a burden of proving legal principles." He then cites the cases of *Beyer v. Decker* and *Gunter v. Sharp & Dohme, supra.*

The question in the case before us does not involve a construction of the act, and is not a question of law as in those cases, but a question of fact upon which the commission had passed; that is, whether the claimant received an accidental injury arising out of and in the course of his employment. The employer's and insurer's B prayer, which was granted, was to the effect that there was no evidence legally sufficient to prove that the claimant received an injury which was accidental in its nature; and the answer to the second issue should be "No." The evidence in the record is directed to the inquiry whether or not there was an accidental injury,

and it tends to show that there was such an injury. Consequently the decision of the commission fell within the provision of article 101, section 56 of the Code, to the effect that the decision of the commission shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same.

The court, we think, was in error in granting the employer's and insurer's B prayer, directing a verdict for them, and refusing upon the facts of the case the prayer of the claimant. The judgment of the trial court will therefore be reversed.

*Judgment reversed, with costs, and case remanded.*