CASE 51.—ACTION BY BEN J. MATTINGLY AGAINST THE KENTUCKY COAL MINING COMPANY.—April 27, 1909.

## Ky. Coal Mining Co. v. Mattingly

Appeal from Union Circuit Court.

J. W. HENSON, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Pleading—Denial—Sufficiency.—A denial of knowledge or information sufficient to form a belief is not a good plea as to the facts within defendant's knowledge.
2. Bills and Notes—Consideration—Presumptions.—Metal checks issued to employes, by which the employer's promises to pay a certain amount to redeem the same, are presumed, in the hands of holders for value, to be based on an adequate consideration.

Ky. Coal Mining Co. v. Mattingly.

3   Master and Servant—Compensation—Medium of Payment.—
    The redemption by the employer at bimonthly pay days of
    checks issued to employes for services at a reduction of 10
    per cent. of their face value is a violation of Const. Sec. 244,
    providing that all wage earners employed in this State in fac-
    tories, mines, workshops, or by corporations shall be paid for
    their labor in lawful money.
4.  Usury—Redemption of Obligations at Discount.—The redemp-
    tion by the employer at bi-monthly pay days of checks issued
    to employes for services at a reduction of 10 per cent. of their
    face value is a violation of the usury law. Ky. St. 1909, Sec.
    2219 (Russell's St. Sec. 1815.)

DRURY & DRURY for appellant.

L. C. FLOURNOY for appellee.

OPINION OF THE COURT BY JUDGE HOBSON.—Affirm-
ing.

The Kentucky Coal Mining Company issues to its
miners aluminum checks stamped on one side "Ken-
tucky Coal Mining Company," and on the other side,
"Good for one dollar in merchandise." It issues
similar checks for 50, 25, 10, and 5 cents. Ben J. Mat-
tingly became the owner of these checks for value to
the amount of $235.65, and, the company declining to
pay them, he brought this suit to recover the amount.
A trial was had upon which the following agreement
of facts was filed:

"That defendant is a corporation operating a coal
mine at Waverly, and pays its laborers at the times
required by law. Further, that frequently its labor-
ers make application to it in advance of pay day for
assistance, and that it did upon such application is-
sue to said laborers aluminum checks or coins marked
'100,' '50,' etc., and at the time of the issue of said
checks or coins it agreed upon pay day to redeem
same at their value, which it was agreed was as
follows: A check marked '100' was good for 90 cents;
a check marked '50' was good for 45 cents; a check

marked '25' was good for 22 1-2 cents; a check marked '10' was good for 9 cents; and a check marked '5' was good for 4 1-2 cents. No checks were ever issued to pay wages that were due, and often checks were issued when nothing had been earned. For such checks the laborers were charged as follows: For check marked '100' they were charged $1; for check marked '50' they were charged 50 cents; for check marked '25' they were charged 25 cents; for check marked '10' they were charged 10 cents; for check marked '5' they were charged 5 cents. The defendant had an arrangement with several merchants in Waverly for the redemption of such checks at the agreed value for which it redeemed same from the miners. It had no such agreement with Mattingly. The checks offered by Mattingly are of the type and kind issued by defendant. For such coins the defendant paid the following sums on pay day: For the coin marked '$1' it paid 90 cents; for the coin marked '50' it paid 45 cents; for the coin marked '25' it paid 22 1-2 cents; for the coin marked '10' it paid 9 cents; and for the coin marked '5' it paid 4 1-2 cents; all in money. Plaintiff demanded payment of these checks both in merchandise and in money, and payment was refused, except upon the terms stated just above, and that this would only be paid him provided he would deposit these checks on either the 1st or 15th of the month, and the defendant would pay these checks upon the above terms on the following pay day. The company redeemed all checks on same terms, whether same were presented by the merchant or the miner to whom they were issued. Coins represented in the majority of cases actual value of labor done or to be done frequently issued when no work had been done

and often as pure charity; that is to say, sometimes a miner would come in and could not get board and the company would advance aluminum checks. Often men left and the company would get no return. Not more than $25 or so was so issued. Sometimes miners overdrew and quit company. All checks issued company expected to redeem at 90 cents on the dollar, the 10 cents to pay for bookkeeping and profit and loss.

"It is further agreed: That checks or coins similar to those sued on in this case were issued by defendant company to its miners from time to time, and that same passed current in the town of Waverly where the defendant's mine was located, and were redeemed by defendant company from any holder at the prices stated in the first part hereof, and that plaintiff Mattingly is now the holder for value of the checks or coins sued on and made part of his petition. That it is impossible to say or ascertain to whom defendant issued and delivered the checks sued on herein. It is further agreed that the plaintiff, Mattingly, is not a miner and has never been so, and has never been in the employment of the defendant, but has gone into the open market, and has bought the coins sued on at a discount for a speculation, and for the purpose of testing the question of the right of the defendant to issue such coins to its miners as aforesaid. Plaintiff bought these coins from the Waverly Mercantile Company, and that company had gotten these coins in the usual course of trade, and got the most of them from a butcher in Waverly, and the butcher, in turn, from the sale of meat to the employes of the defendant or their families, and possibly some of them from other parties as such coins passed current generally all over the town of Waverly with the knowledge of the defendant.

"After issue and after passing into the channels of trade, the identity of the coins is lost."

The defendant's answer contained, among other things, the following: "The defendant says it has no knowledge or information sufficient to form a belief as to whether or not it ever issued the checks sued on and described in plaintiff's petition, or that same were ever delivered by defendant to any employe or that they represented the true value of the labor performed, or that plaintiff is now the owner of any of said checks or coins for value, or that the face value of these represents two hundred and thirty-five dollars and sixty-five cents ($235.65) or any other sum."

The rule is that a denial of knowledge or information sufficient to form a belief is not good as to facts within the defendant's knowledge. The defendant is presumed to know its own checks, and it can not require the plaintiff to prove the genuineness of a check when it is unwilling to say the check is not genuine. For the same reason this allegation is insufficient as to the delivery of the checks to an employe. The checks are a promise in writing to pay, and the law presumes they were based on an adequate consideration. The agreed facts show that the plaintiff was the holder for value of the checks sued on.

This brings us to the real question in the case: Has the defendant a right to a deduction of 10 per cent. from the face of the checks? Section 244 of the Constitution is as follows: "All wage earners employed in this State in factories, mines, workshops or by corporations shall be paid for their labor in lawful money. The General Assembly shall prescribe adequate penalties for violations of this section." Under this section the defendant may lawfully issue

checks to its miners to show what it owes them, but these checks must, at the next bimonthly pay day, be paid at their face value; otherwise, the miners will not be paid for their labor in lawful money, but will be scaled one-tenth of their earnings because a check was issued to them. Section 2219, Ky. St., provides: "All contracts and assurance made, directly or indirectly, for the loan or forbearance of money, or other thing of value, at a greater rate than legal interest, shall be void for the excess over the legal interest." The company did not lend its men any money. Its lending its credit to them until the next bimonthly pay day in consideration of a deduction of 10 per cent. from their wages was a contract the law will not sanction or enforce. If such contracts were upheld, our usury laws would be vain and useless; for they could in this way be evaded without the lender being out of his money at all.

We are therefore of opinion that the circuit court on the agreed facts properly entered judgment for the plaintiff.

Judgment affirmed.