## Freeman v. Craft, et al.

(Decided March 15, 1927.)

### Appeal from Pike Circuit Court.

1. Receivers.—Where assets of insolvent coal corporation were sold, holder of prior mortgage lien should have priority in distribution of sale price over holders of receiver's certificates, issued with-

out notice to, or consent of, mortgagee, for purpose of carrying on business of company while assets and property were in receiver's hands.

2. Receivers.—Where assets of insolvent coal corporation were sold, holders of receiver's certificates, issued without consent of lien-holder, to pay taxes and insurance premiums, should have priority in distribution of sale price over prior mortgage, since such certificates raised money to preserve property.

3. Receivers.—Where assets of insolvent coal corporation were sold, costs of action, including allowance to receiver for services, should have priority over claim of prior mortgage in distribution of sale price.

4. Receivers—Holders of claims for expenses incident to operation of mine, owned by receiver when he ceased to operate it, for which receiver's certificates were not issued, held not to have priority over prior mortgage in distribution of sale price of assets who had no notice of such claims except as to claim for taxes and insurance.

5. Receivers.—One claiming royalty from insolvent coal company held to have priority over prior mortgagee in distribution of sale price of company's assets, since preservation of coal lease demended that the royalties be paid.

6. Receivers.—Employees of insolvent coal company, claiming lien for wages under Ky. Stats., sections 2487-2491, held not to have priority over prior mortgagee in distribution of sale price of company's assets, where claims were not filed with receiver within 60 days after property went into his hands, as provided by section 2491.

7. Receivers.—Delivery of claims for wages, by employees of insolvent coal company, to one of them who was bookkeeper for receiver, to be taken by such bookkeeper to county seat, and filed with receiver, was not "filing with receiver," within Ky. Stats., section 2491, so as to give claimants priority over prior mortgage on company's assets.

8. Time.—Where property of mining company went into hands of receiver on September 27th, claim, to be filed within 60 days from that event, must have been filed not later than November 25th, since, where time is counted from an act, day on which act is done is included.

9. Master and Servant.—One employed by insolvent coal company to operate store or commissary is not entitled to lien for wages against assets of such company under Ky. Stats., section 2487.

10. Receivers.—Compensation claimant against insolvent coal company held not entitled to priority over mortgagee in distribution of sale price of assets, where he did not institute action or file claim with receiver within 60 days after property came into latter's hands, since, under Ky. Stats., section 4912, claimant

must follow same procedure as employees claiming wages under sections 2487-2491.

HARMAN, FRANCIS & HOBSON and J. J. MOORE for appellant.

AUXIER & HINTON, STRATTON & STEPHENSON, PICKLESIMER & STEELE, J. R. JOHNSON and A. J. KIRK for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

This equitable action was instituted in the Pike circuit court by certain of the creditors of the Elkhorn Seams Collieries Company against it and the J. P. Burton Coal Company, to have it adjudged that a mortgage executed by the former to the latter to secure it in an indebtedness of $15,000.00 was preferential and operated as an assignment for the benefit of its creditors; and for the appointment of a receiver to take charge of the assets of the former to be liquidated and applied on the payment of its debts. The defendant, Elkhorn Seams Collieries Company, was engaged in operating a coal mine in Pike county, Kentucky, and appears at the time to have been hopelessly insolvent. A receiver was appointed and qualified on the 27th day of September, 1924. On October 6, 1924, the receiver made a preliminary report, which appears to have been filed out of term time, by which he reported that by making repairs at an estimated cost of $428.12 and by being authorized to borrow $3,500 additional, with which to meet the first month's payroll, and by paying outstanding taxes, $944.71, then due, a total of $5,522.83, in his opinion and judgment the mine could be operated by him so as to produce a profit of approximately $2,800.00 per month. He requested the court to grant him authority to issue receiver's certificates to the amount of $5,522.83 for the purposes indicated and to authorize him to operate the mine. On the day the report was filed the court entered an order in vacation authorizing and directing the receiver to operate the mine and sell and market the coal therefrom, and to issue and sell receiver's certificates not exceeding $5,522.83. It was further adjudged that the receiver's certificates should be a first lien upon the property and assets of the Elkhorn Seams Collieries Company. Pursuant to this judgment of the court the receiver issued and sold certificates and put the mine in operation and continued to operate it for approximately five months. The cost of operation by the receiver ex-

ceeded the returns from the coal sold by several thousand dollars.

Some two years prior to the time when this action for a receiver was instituted the Elkhorn Seams Collieries Company became indebted to appellant, Charles W. Freeman, in the sum of $30,000.00, and executed to him a mortgage on all of its property to secure its payment. The mortgage was duly recorded in Pike county, Kentucky, and its validity is not questioned herein. The mortgagee, appellant Freeman, was not a party, either plaintiff or defendant, to the action in which the receiver was appointed and in which the steps above indicated were taken. He eventually intervened in that action by filing a petition to be made a party; set up his mortgage lien; and sought judgment for the sale of the assets of the Elkhorn Seams Collieries Company in satisfaction of his debt. The sale of the property was not contested, and when sold under orders of the court the lease, the mine, and all of the mining equipment and assets of the insolvent coal company brought $43,700.00.

The question of priority arose between the holders of the receiver's certificates issued in connection with the operation of the mine by him and certain employees of the insolvent mining company who claimed liens under the provisions of section 2487, Kentucky Statutes, and an injured employee who claimed a lien under the provisions of section 4912, Kentucky Statutes, and the mortgagee, appellant Freeman. The chancellor adjudged the priority in the distribution of the sale price of the assets of the insolvent coal company as follows: (1) The costs of the action, including the allowance to the receiver and his attorneys; taxes for the year 1925; the outstanding receiver's certificates, and indebtedness incurred by the receiver for which no certificates had been issued, to an aggregate amount of $11,833.78; (2) to W. K. Elliott for royalties under the terms of the coal lease held by the insolvent mining company $3,600.00; (3) the compensation claim of J. N. Craft to the amount of $819.00; (4) the claims of certain employees of the insolvent mining company to the amount of $6,071.89; and (5) the mortgage lien of appellant, Charles W. Freeman, to the amount of $30,000.00 with interest from August 1, 1922. Certain other claimants were adjudged to participate in the proceeds of the property sold after the payment of the claims above indicated, but, as will be observed, nothing would be left for them and they have not

appealed. Hence, we are not concerned further with them. The appeal has been prosecuted by appellant, Freeman, from the judgment giving the holders of the receiver's certificates, the workman's compensation claim, and the claims of the employees of the insolvent mining company priority over his mortgage lien. He insists that his mortgage lien was superior to all of them and that the chancellor erred in not so adjudging.

We will first deal with the question, whether the chancellor erred in adjudging priority over appellant's mortgage lien to the holders of the receiver's certificates. This question seems to be new to this jurisdiction. The attorneys for neither appellant nor appellees, though they have presented excellent briefs on the question, have pointed to any Kentucky opinions. Our independent investigation has disclosed none. The question, however, seems to have been the subject of many opinions of the courts of last resort of many of the states of the union, of many of the federal courts and of the Supreme Court of the United States. Our research into the question and consideration of the great number of opinions that have been written on the subject has led to the conclusion that the principles of law governing this case under its facts are well and briefly stated in the following from 23 R. C. L., on the subject of Receivers, which may be found on page 88:

> "In the case of a private corporation the court cannot authorize the issuance of receivers' certificates for the purpose of improving, adding to, or carrying on the business of the company, without first having the consent of creditors whose liens would be affected thereby. While the Supreme Court of the United States has not as yet expressly said this, it has so strongly observed the distinction in that relation between the two characters of corporations that there is left but little room for conjecture as to what its determination in a case calling for a decision in the premises would be. The lower federal courts have, however, passed on the question, and are uniform in holding that a receiver of a private corporation has no such latitude in legal contemplation as to the issuance of receivers' certificates as has a receiver of a railroad or public service corporation, and that his authority for displacing mortgage liens, unless by the consent of the mortgagee, extends only to the necessary expendi-

tures incident to administering the assets and preserving the property from deterioration pending the winding up of the business and the settlement of the receivership. The state courts also are quite uniform in their enunciation of and adherence to the doctrine that no priority can be given in the case of the certificates of a receiver of a purely private corporation. According to a number of decisions there is one circumstance which will justify a court in authorizing the issuance of receivers' certificates in the case of a private corporation and displacing prior liens thereby. In a case in which the money is required, not for the purpose of operating the business, but for the purpose of saving the property from destruction, the authority exists.''

An exhaustive note on the question may be found appended to the case, First National Bank of Laramie v. Cook, from the Supreme Court of Wyoming, reported in 2 L. R. A. (N. S.) at page 1013. A much later annotation of the cases on the question may be found in 40 A. L. R., page 244. The writer of the latter annotation states the rule thus:

''The cases are in entire accord in holding that, except for the preservation of the property, the court will not authorize the receiver of a private corporation to issue receiver's certificates taking priority over existing liens.''

The opinions sustaining the rule are there cited and are so numerous that we deem it unnecessary to incorporate them in this opinion. It is to be noted that the general rule as written by the annotator last quoted above has reference to cases where receiver's certificates were issued without the consent of creditors whose liens would be affected thereby.

With these general principles in view, we look to the facts of the case now in hand to ascertain whether the receiver's certificates were issued under such circumstances as authorize their being given preference over the pre-existing mortgage lien. Appellant's mortgage to secure the coal company's indebtedness to him had been executed more than two years before the action was instituted in which the appointment of a receiver was asked, and its validity is not questioned. Appellant, Freeman, the mortgagee, was not a party to the action in which

the receiver was appointed at the time of the appointment and did not become a party until April 9, 1925, when he filed his intervening petition. Appellant, the mortgagee, is a resident of the state of West Virginia, and is not shown by the record to have been present either on the occasion when the receiver was appointed or on any of the occasions when the chancellor adjudged authority to the receiver to issue the certificates. It is conceded that appellant was not notified formerly either of the pendency of the motion for a receiver or of the fact that the court would consider the advisability of authorizing the receiver to issue certificates on any of the occasions when that action was taken. The evidence tends to establish that one of the attorneys who represented some of the creditors who instituted the action against the insolvent coal company for a receiver had previously represented appellant in some other legal matters. This attorney died before the testimony herein was taken on the question of appellant's notice of the appointment of the receiver and of the authorization to him to issue receiver's certificates. It is to be inferred that he did not have authority to represent appellant in the action for the receiver or he would have made him a party thereto. There is some testimony to be found herein tending to establish inferentially that the attorneys who now represent appellant and who filed his intervening petition herein represented him on the day the receiver was appointed and were present in court when that action was taken. However, those attorneys have testified herein and state positively that they did not at that time represent or have authority to represent appellant; and that their first appearance in the case for him or authority to represent him herein arose when they were employed to file his intervening petition. There is some testimony tending to establish that an attorney from West Virginia was in Pikeville, Kentucky, on the day the receiver was appointed and that he learned in private conversation with some of the attorneys representing parties to the action then pending that a motion for a receiver was being heard that day. The record contains no real evidence that the attorney in question had been employed by or had authority to represent appellant in the action for a receiver then pending or on the motion being heard and tried by the chancellor that day. He was not shown to have been in or about the court room where the matter was being tried. There is to be found in

the record no evidence tending in the least to establish that appellant had any character of notice that the chancellor would consider, on October 6th, the date the first receiver's certificates were authorized to be issued, or on any subsequent date when they were authorized, whether the mine of the insolvent mining company should be operated or whether receiver's certificates should be issued for funds with which to do so, supplanting his pre-existing mortgage lien. Nor is there any evidence that he consented to such action.

In this state of case the courts of the country seem to be uniform in holding that mortgage liens may not be displaced by receiver's certificates for the purpose of carrying on the business of the company whose property and assets are in his possession. The federal and state courts are uniform in holding that in the case of a private corporation authority for displacing mortgage liens by issuing receiver's certificates exists only when the mortgagee consents, except that where the money is required, not for the purpose of operating the business, but in order to preserve the estate, precedence may be given to receiver's certificates.

The exception noted seems to be sustained by the great weight of authority, that is, that where it is necessary to raise money to preserve the property the court may authorize the receiver to issue certificates which will displace existing liens without the consent of the lienholders. The opinions supporting the exception may be found in an annotation in 40 A. L. R. at page 251. In Lockport Felt Company v. United Box Board & Paper Company, 74 N. J. Eq. 686, 70 Atl. 980, one of the cases cited under the annotation above, the rule was succinctly stated in these words:

> "The rule may be deduced that in case of private corporations the court may authorize its receiver to borrow money upon the faith and credit of all the property of the corporation, and authorize the issuing of securities which shall displace all prior liens and encumbrances, but only for one purpose, viz., the preservation of the property and the expenses of realizing upon it by a sale. This necessity should be imperative and paramount, and under no other circumstances can a court justify itself to undermine prior liens."

Careful consideration of the facts of this record leads to the conclusion that under the exception to the general rule, a portion of the receiver's certificates adjudged priority by the judgment of the chancellor were properly awarded priority. But that is true with reference only to a small portion thereof. Under the original order entered October 6, 1924, $5,522.83 in receiver's certificates were authorized to be issued. Under that authority the receiver appears to have issued four certificates to the aggregate amount of $4,300.00. The record establishes that the full amount so issued was spent in opening the mine for operation and in operating it.

On February 16, 1925, the receiver reported to the court that the Elkhorn Seams Collieries Company owed taxes; to the state $272.54, to the county $395.37, and to taxing districts $243.30, a total of $911.21; and asked authority to issue receiver's certificates with which to raise the funds for payment. The authority was granted, and on February 26, 1925, a certificate for that amount was issued to the First National Bank, of Pikeville, Kentucky, and the proceeds were used to pay the taxes due. The payment of the taxes due unquestionably was necessary for the preservation of the property, and, under the exception to the general rule, this receiver's certificate was properly adjudged priority over appellant's mortgage lien. On the 3rd day of June, 1925, upon application by the receiver the court entered an order granting him authority to issue a receiver's certificate to Sowards Insurance Agency for $606.49 in settlement of premiums due on insurance policies. For the protection and preservation of the property of the insolvent mining company in his charge and custody, it was necessary that it be kept insured, and the court concludes that for that reason the receiver's certificate. for $606.49 was properly adjudged to be prior to the mortgage lien of appellant, Freeman.

The chancellor properly adjudged the costs of the action, including the allowance to the receiver for his services, priority over appellant's mortgage lien. This court's careful consideration of the record as it relates to receiver's certificate No. 1, held by J. P. Burton Coal Company for $500.00; Nos. 2, 3, and 4, held by First National Bank, of Pikeville, Kentucky, for $2,500.00; $500.00 and $800.00 respectively; certificate No. 6, held by Banks-Miller Supply Company, of Huntington, West

Virginia, for $1,444.14; and certificate No. 7, held by R. W. Damron, of Elk Seam, Kentucky, for $524.56, were all authorized to be issued without notice to appellant, Freeman, and without his consent. Those certificates appear also to have been authorized to be and were issued to furnish the receiver with funds with which to operate the mine of the insolvent coal company, and the funds appear to have been used for that purpose. In view of these facts the court can but conclude that the chancellor erred in adjudging the holders of those certificates priority over appellant's mortgage lien.

It further appears that the receiver filed a report herein, showing that when he ceased to operate the mine he was owing expenses incident to its operation to the amount of $2,847.41, for which no authority to issue receiver's certificates had been obtained and for which none had issued. The chancellor adjudged to the holders of these claims to that aggregate amount priority over appellant's mortgage lien. The record discloses that these items of expenses, with two exceptions, were incurred by the receiver in operating the mine and were incurred without notice to or the consent of appellant, Freeman. The amount of capital stock tax, $38.00, due the collector of internal revenue, and that due Eastern Kentucky Insurance Agent, $32.50, for increase in insurance rates, were properly adjudged priority as being expense necessary to the preservation of the property. For the reason indicated, we conclude that the judgment was erroneous in awarding the holders of these claims, with the two exceptions noted, priority over appellant's mortgage lien.

By the judgment below the chancellor adjudged priority to W. K. Elliott to the amount of $3,600.00 over appellant's mortgage lien, his claim being for royalty on coal mined up to June 1, 1925. It appears that the Elkhorn Seams Collieries Company operated its mine under a lease providing that a minimum royalty of $200.00 per month should be paid, and that W. K. Elliott was the owner of that royalty interest during the period for which these royalties were allowed. The preservation of the coal lease, which was the most valuable asset of the insolvent mining corporation, demanded that the royalties be paid under penalty of forfeiture, and the court encounters no difficulty in holding that for the royalties to the amount of $3,600.00 the chancellor properly adj deed priority over appellant's mortgage lien.

The argument for such of the appellees as are holders of claims arising out of the operation of the mine and to whom priority was adjudged by the chancellor that it would have cost as much for the receiver to preserve this mining property as it cost to operate the mine, and that therefore their claims were properly awarded priority is merest conjecture and speculation. We can try the case only on the record as made and not on what might be true if some other course had been pursued. The items of expense incurred by the receiver in operating the mine can be treated only under the facts appearing with reference to them. What might have been the result of the receiver's actions in expending funds to preserve the property if that course had been pursued is not presented, since the claims to which priority was adjudged arose out of the receiver's operation of the mine.

The chancellor adjudged the claims of appellees, C. E. Blair, Charles A. Compton, R. L. Sparks, Allen Rasnick, Joe D. Ramsey and H. G. Foglesong, aggregating $6,071.89, priority over appellant Freeman's mortgage lien, upon the theory that they were entitled to it under the provisions of section 2487-91, both inclusive, Kentucky Statutes.

As applied to the case now before us, section 2487 provides that when the property or effects of any mine "shall be assigned for the benefit of creditors, shall come into the hands of any executor, administrator, commissioner, receiver of a court, trustee or assignee for the benefit of creditors, or shall in anywise come to be distributed among creditors, whether by operation of law or by the act of such company, owner or operator," its employees shall have a lien for wages then due them upon all of the property and effects of the mine.

Section 2488 provides that the lien for the full amount due shall be superior to that of any mortgage or other encumbrance thereafter created; and that as to the wages coming due to employees within six months before the property or effects shall in anywise come to be distributed among creditors, as provided in section 2487, the lien shall be superior to mortgage liens or other encumbrances theretofore or thereafter created.

Sction 2490 provides:

> "When any such company, owner or operator shall suspend, sell or transfer such business, or when the property or effects engaged in such busi-

ness shall be taken in attachment or execution, so that the business shall be stopped or suspended, the said lien shall attach as fully as provided in section 1 of this article, and in such case may be enforced by proceedings in equity."

The concluding portion of section 2491, which provides how and the time within which these liens must be enforced, reads:

"Suit must be filed to enforce the lien given by this article within sixty days from the date of the assignment, or from the date when the property shall go into the hands of a receiver or trustee, or from the date when the business shall be stopped or suspended, or the property sold; or the claims for which a lien is asserted must be filed in said time with the person authorized to receive and report claims."

These facts appear: About June 1, 1924, the Elkhorn Seams Collieries Company ceased to operate its mine and operations were never resumed until after the appointment of the receiver when he, as hereinbefore disclosed, opened the mine and resumed operations. The claimants above named whose claims for wages were adjudged priority appear to have been the superintendent of the mine and skilled foremen in various departments of the mining operation. They were retained on the payroll in order that the organization might not be broken up and in the hope that by some means the company might find itself able again to resume operations. Their claims for wages due them appear not to have been paid for several months before mining operations were suspended, and the amounts allowed to them by the judgment below represent the wages due them under their employment for the six months prior to the date when the receiver was appointed and qualified.

There is serious question as to whether the suspension of operations on or about June 1, 1924, is the controlling date when their liens attached under the provisions of section 2490, supra, so that their action to enforce them must have been instituted within sixty days thereafter or be lost, under section 2491, supra. The mining company suspended June 1, 1924, and never thereafter resumed operations. At that time it was hopelessly insolvent. Mortgages then of record secured

indebtedness against it to a greater amount than its assets brought when subsequently sold. It then was indebted to the claimants above named for wages for more than six months. It owed hundreds of other creditors. It suspended operations because it did not have the funds with which to continue. Numerous creditors obtained judgment and levied executions on the mining property.

The provisions of section 2490, supra, were considered at length, construed and applied by this court in Producers' Coal Company of Kentucky v. Barnaby. 210 Ky. 244, where it was held that the lien attached in favor of the laborers whose wages were due at the time the mining company ceased operating. In that case actions were instituted by the laborers within sixty days after operations ceased and were upheld by the trial court and this court. It was held that by the suspension of operations under the circumstances prevailing the effects of the company came "to be distributed," within sections 2487 and 2490, supra. The principles there enunciated and the construction and effect there given to the sections of our statutes, relied upon by the employees herein for the basis of their claim to superior lien, would seem to have required appellee claimants to have taken action within sixty days from the suspension of operations. This they did not do. Without so deciding, however, we will proceed to a question that is conclusive.

The appellees, whose claims for wages were adjudged priority, contend that they preserved their liens and priority under the statutes, supra, by filing their claims with the receiver "within sixty days from the date" when the property went into his hands. as is provided may be done by section 2491, supra. Under this contention the record discloses that the claims were not filed with the receiver until November 26, 1924. Their contention that since their claims were prepared and left with C. E. Blair, who is one of the claimants, who was acting as bookkeeper for the receiver while he operated the mine, was in effect a filing of those claims with the receiver, cannot be sustained. Blair himself is one of the claimants and filled the same position for the receiver in operating the mine that he had formerly filled for the Elkhorn Seams Collieries Company while it was operating the mine. Nothing growing out of his employment by the receiver to perform services while he was operating the mine tends in the least to establish that he had authority from the receiver to receive and file these

claims as they are required to be filed under section 2491,
Kentucky Statutes, supra; and in view of the fact that
the claims all appear to have been verified on November
26, 1925, except that of Blair himself, which was verified
the previous day, and except that of R. L. Sparks, which
does not appear ever to have been verified, there seems
to be no evidence in the record that these claims were pre-
sented to or lodged or filed with Blair within sixty days
after the receiver took possession of the insolvent mining
company's property. Under the facts appearing, it can
not be held that delivering these claims to Blair, who was
one of the claimants, to be taken by him to the county
seat and filed with the receiver, if we assume contrary
to what appears to be true that that was done on Novem-
ber 25th, was a filing with the receiver on that date, as
must be done under the statute, supra. Since the prop-
erty of the mining company went into the hands of the
receiver on September 27, 1924, to be within sixty days
from that event, the claims must have been filed with
him not later than November 25, 1924. See Whitt v.
Howard, 210 Ky. 215; Commonwealth v. Lee, 154 Ky.
717, 159 S. W. 522, and the cases therein cited. The
claims of all save Sparks appearing to have been filed
on November 26, 1924, were filed one day too late to pre-
serve the priority of these claims over appellant's mort-
gage lien. Hence, the chancellor erroneously adjudged
them priority.

Claimant, R. L. Sparks, appears to have been em-
ployed by the Elkhorn Seams Collieries Company to
operate a store or commissary for it, and does not appear
to have had any other employment or to have been em-
ployed by it in its mining operations in any particular.
In Winter v. Howell's Assignee, 109 Ky. 163, it was held
that the lien provided for by section 2487 does not extend
to this class of employees. It was said:

> "For his services in running the store as sales-
> man therein, collecting rents or in attending to any
> other business he stood on the same plane as other
> creditors. The lien is created by section 2487, Ken-
> tucky Statutes, in favor of the employees 'of any
> rolling mill, foundry or other manufacturing estab-
> lishment,' and was certainly not intended to include
> services rendered in a store."

That opinion was dealing with a manufacturing
establishment, and the same rule would necessarily apply

with reference to a mine or any of the other various industries mentioned in the section, supra. For these reasons the chancellor erroneously adjudged to claimant, R. L. Sparks, to the amount of the salary due him for running the mining company's store, priority over appellant's pre-existing mortgage, although his claim appears to have been filed with the receiver within sixty days after he took charge of the isolvent mining company's property.

J. N. Craft, whose claim to the amount of $800.00 was adjudged priority over appellant's mortgage lien, appears formerly to have worked for the Elkhorn Seams Collieries Company, and while doing so to have been injured by accident arising out of his employment. Both were operating under the provisions of the Kentucky workmen's compensation law and he had applied for and been awarded compensation at the rate of $15.00 a week for two weeks, and at the rate of $3.00 per week for 333 weeks. An appeal was taken to the Pike circuit court, and on July 11, 1923, judgment of that court was entered sustaining the award of the board and adjudging that Craft recover compensation as indicated. A copy of that judgment appears to have been mailed to H. H. Porter, receiver for the Elkhorn Seams Collieries Company, on December 16, 1924, the matter being called to the attention of the receiver then for the first time. Section 4912, Kentucky Statutes, provides:

> "All rights of compensation granted by this act shall have the same preference or priority for the whole thereof against the assets of the employer as allowed by law for any unpaid wages for labor."

This section seems clearly to place compensation awards upon exactly the same footing as claims for labor under section 2487, hereinbefore discussed. That being true, it would seem necessarily to follow that to preserve the lien with consequent priority over existing mortgage debts, the compensation claimant would be required to take action to that end just as is required in the case of an employee with wages due, under section 2491, hereinbefore discussed. The record discloses that this compensation claimant failed wholly to take the steps required by section 2491, Kentucky Statutes, to preserve his lien so as to preserve its priority by failing either to institute action or to file his claim with the receiver within sixty days. It is impossible to escape the conclusion that by

such failure J. N. Craft lost his priority over appellant's pre-existing mortgage, and that the chancellor erroneously adjudged him priority.

The conclusions we have reached on the direct appeal of the mortgagee, Freeman, dispose of the cross-appeal of the employees who have prosecuted it upon the theory that the chancellor erred in awarding them priority to the extent only of wages earned by them within the six months before the appointment of the receiver rather than for their wages which "came due" within that time, and the cross-appeal need not be considered.

For the reasons indicated the judgment herein is reversed and the cause remanded, with direction that a judgment in conformity herewith be entered.