# Southern Coal Co. v. Martin's Fork Coal Co. et al. and nine other cases.

April 19, 1940.

As Modified on Denial of Rehearing May 30, 1941.

Andrew Duncan, Jr., and James Sampson for appellant.

H. H. Fuson, J. S. Forester and J. B. Carter for appellee Martin's Fork Coal Co.

J. S. Forester and J. B. Carter for appellee Bank of Harlan.

John L. Williams for appellee Henry H. Pope.

J. B. Snyder and W. T. Davis for appellee Sunshine Supply Co.

J. S. Forester and J. B. Carter for appellees H. H. Fuson and W. W. Lewis.

E. L. Morgan for appellee Sunshine Mining Co.

E. L. Morgan and E. H. Johnson for appellee George L. Michael.

J. C. Baker for appellees Coy, Ellis, Hardy, O. S. and Clyde Goforth.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming in part and reversing in part.

These ten appeals and cross-appeals are the result of various creditors attempting to collect their debts from the insolvent Sunshine Mining Company, which was forced into receivership. The cases were consolidated below and on motion they were heard together here and will be disposed of in one opinion.

For convenience the parties will be referred to throughout the opinion as follows: The Southern Coal Company will be called the Company; the Sunshine Mining Company will be called the Mine; the Sunshine Supply Company will be called the Commissary; the Martin Forks Coal Company will be called the Lessor; the Bank of Harlan will be called the Bank; the Electric Service & Supply Company will be called the Electric; and the various labor claimants will be called by their names.

On July 29, 1936, the Mine borrowed $3,000 from the Bank, executing its notes to the Bank due four

months after date, secured by a mortgage on certain mining equipment, which debt had been reduced to $2,500 when this litigation started. On Sept. 24, 1936, the Company loaned the Mine $7,000, payable in one year in 12 equal monthly installments, which was secured by a mortgage on certain mining equipment; and on Sept. 29, 1936, the Company sold the Mine a storage battery locomotive for $800 to be paid in one year in equal monthly installments under a conditional sales contract creating a lien on the locomotive.

On Oct. 22, 1936, the Commissary and the Mine entered into a written contract whereby in consideration of a 10% discount on all scrip received by the Commissary from the Mine's employees, the Mine agreed for a period of 12 months to run all scrip issued its employees, except that issued for gasoline and amusement, through the Commissary, and to redeem by the 16th of each month, all scrip taken in by the Commissary during the preceding month. At the time the Mine closed on Jan. 19, 1937, the Commissary held its unredeemed scrip in the amount of $5,677.29.

The Mine had become in arrears in the sum of $1,759.64 in the payment of royalties due the Lessor and on Jan. 22, 1937, the Lessor filed its petition in equity to enforce its lien for this royalty and made the Mine, the Bank and the Company defendants. The Company and the Bank by appropriate pleadings sought to recover their debts and to enforce their mortgage liens. The Commissary filed an intervening petition seeking recovery for this unredeemed scrip against the Mine on the contract dated Oct. 22, 1936, and sought a general order of attachment. By amended intervening petitions the Commissary pleaded the Mine had breached its contract and was not entitled to the 10% discount on the scrip; that the Commissary had obtained written assignments from each laborer from whom it had received scrip and thereby became subrogated to the workmen's liens for wages provided by Kentucky Statutes, Section 2487 et seq., and alleged facts that brought the labor performed by each person from whom it received scrip within the terms of these sections of the statute.

Many claimants filed intervening petitions asserting labor liens against the Mine's property. The Electric asked that it be adjudged a labor lien, also a material-

man's lien in the sum of $9,911.88; and M. F. Sizemore asked to be adjudged a labor lien and also a materialman's lien in the sum of $806.62. All of the intervening petitioners pleaded that the work was done within the six months preceding, and such petitions were filed within sixty days from the time the mines closed. All pleadings were controverted of record. It was ordered that separate appraisals be made of the property covered by the liens of the Company, the Bank and the Lessor, and that all the property of the Mine, including the lease, be sold separately on Feb. 20, 1937, and immediately thereafter sold as a whole, and the sale bringing the highest price be accepted. The report of the appraisers shows the property was appraised as a whole at $10,000; and the report of sale shows W. W. Lewis became the purchaser of the entire property for $13,750, but fails to show the bids on the separate portions of the property offered for sale. However, the master commissioner who made the sale testified that the Company bid $6,000 on the property upon which it held a lien, and the Bank bid the amount of its debt, interest and cost on the property mortgaged to it.

The cause was referred to Hon. J. B. Walls, special commissioner, to hear proof and to report on claims. Certain of the litigants filed exceptions to his report which were passed on by the chancellor who rendered one final judgment adjudicating the rights of all parties and intervenors, and these various appeals and cross-appeals are prosecuted from that judgment. To keep this opinion within reasonable limits we must forego a discussion of many of the questions raised by counsel on the various appeals and cross-appeals and confine ourselves to those which are decisive.

The special commissioner was of the opinion that the Commissary was not entitled to a labor lien on the $5,677.29 in scrip which it had received from miners purchasing its goods. The chancellor sustained exceptions to this ruling of the commissioner and adjudged the Commissary was entitled to a labor lien in this sum. Under the facts shown by the record we must agree with the commissioner and disagree with the chancellor. It is clear the Commissary accepted this scrip under the contract it had with the Mine and that in so doing it had no intention of becoming subrogated to the wage lien which Section 2487 of the Statutes gives the miner, but

that the Commissary relied solely upon the terms of the contract obligating the Mine to redeem the scrip. The contention of the Commissary that it should be subrogated to the lien the Statutes gives the miner is, in our judgment, an afterthought.

After the Commissary had acquired this scrip from the laborers, the obligation of the Mine to redeem same was not under any contract it had with the laborers, but was under the contract it made with the Commissary whereby it agreed to pay the Commissary in cash 90% of the value of the scrip. When the Commissary bought the scrip from the laborers, the claims of the latter were extinguished and a new demand for a different amount in favor of the Commissary against the Mine came into existence. No lien existed before the receivership and there were no liens in favor of the laborers after the receivership because they no longer owned the scrip. The attempt of the laborers to assign their scrip for wages to the Commissary, after the latter had bought the scrip from the former, and after the receivership, was vain and ineffective. As the laborers' debts for wages were extinguished, they had no liens to assign. J. C. Stewart & Co. v. McLeod, 5 Cir., 222 F. 253; Cairo & V. R. Co. v. Fackney, 78 Ill. 116; Texas & St. L. R. Co. v. McCaughey, 62 Tex. 271; Bell v. Arledge, 5 Cir., 192 F. 837.

That part of the judgment allowing the Commissary a labor lien is reversed and the chancellor will enter a judgment for the Commissary against the Mine in the amount of its claim.

Sizemore was not an employee of the Mine but was an independent contractor who furnished materials to it in the sum of $806.62 and filed a statement of his claim in the county court clerk's office as required by Section 2468, Kentucky Statutes, to assert a materialman's lien. In his intervening petition he asked to be adjudged a labor lien under Section 2487 of the Statutes as well as a materialman's lien. The chancellor properly refused to adjudge Sizemore a lien under Section 2487 but did adjudge him a materialman's lien inferior to the royalty lien, the labor liens and the mortgage liens. Sizemore prosecuted an appeal against the Bank and others who were adjudged superior liens and a cross-appeal against the Company.

The effect of the contract between the Mine and the Commissary was that the latter would furnish goods to pay the former's laborers, and the Commissary was no more entitled to a lien for so doing than if it had made the Mine a loan of money to meet its pay-roll. It could hardly be argued that a monetary loan for pay-roll purposes would entitle the lender to a lien under Section 2487 of the statute. The general rule is that one who lends money to an employer to pay laborers, who if their wages had remained unpaid would be entitled to a lien therefor, is not entitled to be subrogated to the laborers' liens merely by virtue of making the loan to the employer. The loan must be made in expectation of being subrogated and under an agreement to that effect. Lovingood v. Butler Construction Co., 100 Fla. 1252, 131 So. 126, 74 A. L. R. 513; Sweet v. Fresno Hotel Co., 174 Cal. 789, 164 P. 788, Ann. Cas. 1918D, 346; In re North River Const. Co., 38 N. J. Eq. 433. See annotation 74 A. L. R. 522. To allow such a claim as is here asserted by the Commissary as a labor lien might in many instances jeopardize the collection of lien claims by laborers who had not sold their scrip.

It will be noted that the contract was for the mutual benefit of the Commissary and the Mine and militated against the miners. The Commissary obtained practically a monopoly of the miners' business and the Mine obtained a reduction of 10% of its labor expense. The miners received no benefit from the contract, but were to be influenced by the Mine to trade at the Commissary instead of trading at other stores where it might have been possible for them to have bought goods at lower prices. Such contracts have been condemned by this court on several occasions, Hudnall v. Watts Steel & Iron Syndicate, 49 S. W. 21, 20 Ky. Law Rep. 1211; Com. v. Hillside Coal Co., 109 Ky. 47, 58 S. W. 441, 22 Ky. Law Rep. 559; Kentucky Coal Mining Co. v. Mattingly, 133 Ky. 526, 118 S. W. 350. In Kentucky Coal Mining Co. v. Mattingly, it was said on the authority of Crawford v. Wick, 18 Ohio St. 190, 98 Am. Dec. 103, that such a contract would be contrary to public policy even in the absence of Section 244 of our State Constitution.

We are not holding that a merchant who takes scrip from a miner cannot obtain by assignment the statutory lien securing the miner's wages, or that the merchant cannot be subrogated to the miner's lien. Our

ruling here is limited to the facts in this case wherein the taking of the scrip by the merchant extinguished the miner's lien and wherein the merchant took the scrip under a contract with the employer to redeem same at a discount and without any provision that the merchant should have the benefit of the miner's lien. Here the Commissary at the time it took the scrip did not expect, or even anticipate, a lien by assignment or subrogation.

The lien given by Section 2487 is only for unpaid wages of employees and does not include sums due independent contractors for services and materials furnished under their contracts. Katz v. Scott, 229 Ky. 738, 17 S. W. (2d) 1024; Superior Elkhorn Coal Co. v. Allen, 238 Ky. 280, 37 S. W. (2d) 52. As the statements filed by Sizemore to perfect his materialman's lien was subsequent to the recording of the mortgages, he cannot successfully contend his materialman's lien is superior to the mortgage liens, as no effort was made to show the holders of the mortgage liens had actual knowledge that Sizemore was furnishing materials for which he was claiming a lien. Weil v. B. E. Buffaloe & Co., 251 Ky. 673, 65 S. W. (2d) 704. That part of the judgment relating to Sizemore is affirmed on the appeal and the cross-appeal.

The Electric was not an employee of the Mine but was a corporation which furnished to it certain materials and labor installing and repairing same to the extent of $9,911.88 under an independent contract. It filed statements of its claims in the county court clerk's office on the 10th and 13th of March, 1937, as required by Section 2468 of the Statutes to perfect a mechanic's lien and a materialman's lien. In its intervening petition it asked to be adjudged a labor lien as well as a materialman's and mechanic's lien. The chancellor correctly refused to adjudge it a labor lien, but did adjudge it the same character of materialman's lien as was adjudged Sizemore as is set out in the preceding paragraph. Like Sizemore, the Electric prosecuted an appeal and cross-appeal. What is written in the preceding paragraph relative to Sizemore applies here and we will not repeat it. That part of the judgment which concerns the Electric is affirmed on the appeal and on the cross-appeal.

In the Sizemore record the special commissioner

filed his written motion for an allowance of $250 for services, which motion stated he had conducted eleven sittings of one day each. Thereafter he filed an amended motion asking for this same allowance but stating that he had rendered extraordinary services in examining the record, claims, etc. Neither motion was verified, nor supported by a verified statement. Sizemore and the Electric both objected to any allowance being made the special commissioner "on the face of the claim," which we interpret as being an objection to the form in which the commissioner's claim was filed; and they further objected to any sum being allowed for extraordinary services. The chancellor allowed the commissioner $100 which included both his regular and extraordinary services. Section 1740, Kentucky Statutes, fixes the fees of such commissioner at $3 a day for the time actually engaged. The court cannot increase this sum, although the statute does not prevent an allowance for extraordinary services or expenses incurred by the commissioner in the performance of his duties. Before the court can make an allowance to the commissioner he must file a verified statement in writing as required by Section 396, Kentucky Statutes, showing the number of days he acted and what extraordinary services he rendered. The allowance of $100 to the special commissioner was unauthorized upon the claim filed. Carrs Fork Coal Co. v. Johnson Drug Co., 249 Ky. 371, 60 S. W. (2d) 952, and cases cited therein.

Ellis Goforth and Coy Goforth were miners and the chancellor sustained exceptions to the commissioner's report refusing to allow them liens on their claims for wages and the judgment gave Ellis Goforth a labor lien for $504.84 and Coy a labor lien for $213.50. The Company made a motion for an appeal from that part of the judgment in favor of Coy and has prosecuted an appeal from that part of the judgment in favor of Ellis. As the facts in these two cases are similar and as both are controlled by the same rule of law, we will discuss the cases together.

Ellis and Coy are related to O. S. Goforth, Sr., and to Clyde Goforth, which latter two own about one half of the capital stock in the Mine. About the time the Mine was incorporated on May 15, 1936, it was agreed between George Michael, the president of the Mine, and Clyde and O. S. Goforth, Sr., that Michael would fur-

nish certain capital and equipment and the Goforth family would let their labor go towards the payment of stock which Clyde and O. S. Goforth, Sr., subscribed. Coy's original claim was $486.08, but the chancellor reduced it by $272.58, as it was shown the Mine owed him that sum July 1, 1936, which was more than six months before he asserted his labor lien, Douglas Wilson, the Mine bookkeeper, testified Coy and Ellis left their wages with the Mine. It is significant that the payroll books could not be found and no check could be made as to the dates the wages of these two men were earned. It is difficult to understand why Ellis and Coy left their wages of around $500 each with the Mine unless it was their intention to lend this struggling enterprise these sums. We are firm in our belief that Ellis and Coy did lend their wages to the Mine, therefore the sums due them represent unpaid loans rather than unpaid wages and they are not entitled to liens therefor. In re Caledonia Coal Co., D. C., 254 F. 742. The motion for an appeal is granted in the Coy Goforth case and that part of the judgment allowing him a lien is reversed. The judgment is also reversed on the appeal in the Ellis Goforth case. The chancellor is directed to set aside so much of the judgment as grants these two men liens to secure their wages, and to enter a judgment against the Mine in the full amount of their wages.

George Michael was president of the Electric, as well as the Mine, and Henry Pope was employed by the Electric as a bookkeeper on a fixed salary. Pope testified that Michael and O. S. Goforth, Sr., employed him as head bookkeeper for the Mine and it was agreed he was to receive a lump sum of $400 for his services. He contends that as his evidence is not contradicted the chancellor could not do otherwise than to allow him a labor lien and that we cannot reverse the chancellor on a finding of fact where the evidence is not conflicting. But Pope's own testimony convinces us he was not an employee of the Mine, but that he was an independent contractor to audit the books, install an improved bookkeeping system and to start Wilson, the regular bookkeeper, on the improved system. Pope testified his duties were to "line out the books  *  *  *  and figure out where they stood"; that he was employed "as an accountant to repair the books and determine the standing of the company,  *  *  *  and to help the book-

keeper.'' Pope did not know the exact day when he was employed and when asked whether his employment was by the month or job he replied; ''Part by the job and so much a month to continue, but by the time they got ready to continue they discontinued. I was to receive a salary after it was done. After the first of the year I was to receive a definite salary.'' An employee in the capacity of a bookkeeper is entitled to a lien for wages under Section 2487, Kentucky Statutes; Winter v. Howell, 109 Ky. 163, 58 S. W. 591, 22 Ky. Law Rep. 697. However, it is plain from the above excerpt from Pope's testimony that he was not an employee of the Mine but was an independent contractor, and he has no right to a lien under this statute to secure his debt. Katz v. Scott, 229 Ky. 738, 17 S. W. (2d) 1024. The motion for an appeal is granted and the judgment is reversed so far as it gives Pope a lien for the amount due him. He is entitled only to a judgment against the Mine for $400.

Fuson and Lewis in the course of the litigation obtained assignments of thirty-four labor claims aggregating $491.91. The court held the thirty-four miners who assigned these claims were entitled to liens, and the judgment recites these claims had been assigned to Fuson and Lewis and they were entitled to a lien to secure same. On its motion for an appeal the Company does not contest the right of the laborers to assign these claims during the progress of the litigation, but it contends none of these thirty-four claims were duly proven as liens as required by Sections 2488-2494 of the Statutes, in that the various claimants did not appear in person before the commissioner and testify to the written statements filed in support of their claims. The weakness of such contention is that the record does not show any of the various litigants filed exceptions to the manner in which these claims were proven, nor did any of them ask the court to pass upon its competency; and no exceptions were filed to the commissioner's report on the ground that these thirty-four claims were not duly proven. As no objection was made to the manner in which these claims were proven, it was waived. Moss Federal Coal Co. v. Rhea, 215 Ky. 18, 284 S. W. 100.

Fuson and Lewis bought these claims at around fifty cents on the dollar, and the Company raises the question in its brief that Section 4758b-1, Kentucky Statutes, limits recovery on scrip to the amount paid there-

for. But this question is not involved here as Fuson and Lewis did not buy scrip from these miners and are not suing to recover on scrip. Their recovery is based solely upon the assignments made them during the litigation by the thirty-four miners of their claims against the Mine. Since we have declined to grant an appeal, it is unnecessary to determine whether the judgment was for $491.91 in favor of Fuson and Lewis, or whether it adjudged small sums to each of the thirty-four laborers aggregating $491.91 and assigned that sum to Fuson and Lewis. The judgment that the proceeds of these thirty-four labor lien claims be paid to Fuson and Lewis is affirmed.

The Company prosecuted an appeal from the judgment because the chancellor charged it with $1,400 which the Mine claimed as a credit on its account for money returned to the Company. The Mine was in hard financial lines and on or about Jan. 14, 1937, requested the Company to advance it $1,400 with which to meet a payroll. The Company complied with this request and forwarded the Mine its check for $1,400. This check did not reach the Mine promptly, so on Jan. 8, 1937, it drew a draft on the Company for $937.14 for its payroll. The Company honored this draft but at the time it did so requested the Mine to return its check for $1,400. On Jan. 9, 1937, the Mine bought a cashier's check for $1,400 and mailed it to the Company. The evidence for the Company is that it never made any entry on its books of this $1,400 item because when it honored the draft, the Mine promised to return its check, and that the $1,400 returned to it in the form of a cashier's check on Jan. 9, represented the $1,400 check it had mailed the Mine on Jan. 4th. The evidence for the Mine is that this $1,400 is in part payment of $1,919 the Company loaned it on Dec. 16, 1936, and that it is entitled to a credit for this $1,400 on the account it owed the Company. The testimony of the witnesses for the Company on this point is clear and convincing, while the testimony of those for the Mine is cloudy and uncertain. As hard up as the Mine was, we cannot believe that on Jan. 9th it was repaying $1,400 of a $1,900 loan the Company had made it on Dec. 16, 1936, when at the very time it sent this cashier's check to the Company it did not have money enough to meet its payroll, and was only able to do so through the Company accepting its $937 draft. It is

clear to us this $1,400 cashier's check the Mine mailed the Company on Jan. 9th was but returning the $1,400 the Company mailed to the Mine on Jan. 4th.

The evidence for the Company shows its total claim against the Mine was $6,686.50, which after deducting a 15% attorney fee it had erroneously charged, left the Mine owing it $5,814.35. The court disallowed an item of $551.10 and another of $401.39 on the Company's account against the Mine from which no appeal is prosecuted. Deducting this $952.49 leaves the Mine indebted to the Company in the sum of $4,861.86, which includes the $1,400 the chancellor erroneously deducted. By an oversight the chancellor used $5,677.29 as the amount claimed by the Company as being due from the Mine, instead of the correct figure of $5,814.35 (the chancellor having confused the amount of the claim of the Company with the amount of the claim of the Commissary). The Company filed a motion to have the chancellor correct this clerical misprision and although the record shows he overruled this motion, yet as a matter of fact the chancellor corrected this figure and based his calculation on the correct figure of $5,814.35. After making this correction the chancellor correctly dismissed the Company's petition for a new trial to correct this numerical error. The judgment is reversed as to the Company and the chancellor is directed to enter judgment for it in the sum of $4,861.86 and adjudge this sum is secured by a lien upon the property described in the Company's mortgage and conditional sales contract.

The record shows the Company bid $6,000 on the property upon which it held a lien and the Bank bid the amount of its debt, interest and cost on the property in lien to it . The Lessor's royalty is $1,759.64 for which it has a lien. The Company's lien debt is $4,861.86, and that of the Bank is $2,000; the labor liens, as we calculate them from those parts of the judgment not reversed, total $1,178.48, making all the liens amount to $10,300.98. The property brought $13,750, hence there is sufficient money to satisfy all liens in full, including interest and cost, and perhaps something will be left to apply on the materialman's and mechanic's liens. Therefore, it is not necessary for us to prorate the money between the Company and the Bank as requested in the brief for the Company.

This opinion shows what appeals are granted and

the reversals thereon and which appeals are denied; it also shows what parts of the judgment are affirmed and what parts are reversed on the appeals and the cross-appeals, and it is not necessary for us to summarize here.

Judgment is affirmed in part and reversed in part.