## Skaggs et al. v. Elkhorn Coal Corporation et al.

April 28, 1944.

S. S. Willis, Wells & Wells, and Edward L. Allen for appellant.

Lewis E. Harvie and J. W. Howard for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

For convenience the appellant, Paintsville Hospital Company, will be referred to as the Company, and the appellee, Elkhorn Coal Corporation, will be referred to as the Corporation. These three appeals arise from the efforts of appellants, Dr. H. R. Skaggs, the Company and Douglas Hays, to assert preferred claims against the assets of the Corporation after it had been forced into receivership. The facts and the law applicable thereto being practically the same in each case, they were heard together in this court and all three appeals will be decided in this opinion.

We will first dispose of the appeal of Douglas Hays. He was given twenty days from Dec. 3, 1943, to file brief, which he failed to do. We have consistently held that where no brief is filed pointing out the errors relied upon for reversal, it will be presumed none were committed and that the judgment is correct. Hunt v. Pikeville Nat. Bank, 218 Ky. 756, 292 S. W. 327; Consolidated Underwriters v. Richards' Adm'r, 276 Ky. 275, 124 S. W. (2d) 54.

Skaggs and the Company asserted preferred liens of $11,432.45 and $9,931.31, respectively, against the assets of the Corporation under KS 2487 (KRS 376.150) et seq., by virtue of contracts they entered into with the Corporation and the local union of the United Mine Workers of America wherein these appellants agreed to render medical services and hospitalization to the miners in consideration of the latter agreeing that the Corporation should make semi-monthly deductions of $1 from the wages of married and 75c from unmarried miners, and pay same, along with certain other wage deductions for specified services, to appellants.

As a large number of claims were filed against the Corporation, the chancellor referred the case to the master commissioner to hear proof and report claims. The commissioner allowed Skaggs and the Company each a preferred claim but the chancellor sustained exceptions thereto and held they were not entitled to a preference. From the judgments declaring they were entitled only to common claims, Skaggs and the Company appeal.

The Corporation was forced into receivership by proceedings filed in the Circuit Court of Kanawha County, West Virginia, and on Aug. 22, 1940, the chancellor of the Circuit Court of Letcher County, Kentucky, on motion duly made appointed ancillary receivers to conduct the operations of the Corporation's mines in its jurisdiction, and enjoined all creditors from commencing or prosecuting any action at law or in equity against the Corporation without leave of court. By a subsequent order entered Nov. 19, 1940, the chancellor directed that all persons having claims against the Corporation, other than those secured by mortgages or statutory liens duly filed or recorded, be required to file same with the receivers on or before Jan. 6, 1941, or be barred.

On Dec. 31, 1940, Skaggs filed with the receivers an affidavit setting out his preferred claim of $11,432.45 for professional services rendered miners from February to June, inclusive, of that year under the above-mentioned contract, averring that the Corporation collected this sum for the claimant by deducting it from wages earned by the miners "and holding same as agent and in trust for the claimant." On the same day the Company filed with the receivers the affidavit of its president (which appears to have been verified on Jan. 4, 1941), asserting in practically the same terms as the affidavit of Skaggs its preferred claim of $9,931.31 for hospital services rendered miners, except the Company's affidavit does not state when the services were rendered or the deductions made from the miners' wages.

On Oct. 11, 1941, both Skaggs and the Company filed intervening petitions in the Letcher Circuit Court fully pleading their contract with the Corporation and the union, the rendition of the services, the filing of their claims as set out above and the deductions made from the miners' wages. Skaggs averred that the Corporation collected $11,432.45 for him but on account "of the financial embarrassment and impending receivership, did not pay same to claimant, but entered the said amounts on its books as due and payable, and made a record thereof at the time." Practically the same allegation was made by the Company in its intervening petition. In addition to the averments that they have preferred liens under KS 2487 (KRS 376.150) each of the appellants allege they were subrogated to the rights of the miners and entitled to the same priority.

It is provided in KS 2491 (KRS 376.190) "suit must be filed to enforce the lien given by this article within sixty days from the date of the assignment, or from the date when the property shall go into the hands of the receiver or trustee, or from the date when the business shall be stopped or suspended, or the property sold; or the claims for which a lien is asserted must be filed in said time with the person authorized to receive and report claims."

There is nothing in the record showing that the miners complied with this section in perfecting liens to secure their wages, nor did. appellants. The ancillary receivers were appointed on Aug. 22, 1940, yet appellants did not file their claims with them until Dec. 31, 1940, and did not file their intervening petitions until Oct. 11, 1941. Therefore, it follows that the chancellor correctly decided they had no liens. Freeman v. Craft, 220 Ky. 15, 294 S. W. 822; McGlone v. Smith, 293 Ky. 131, 168 S. W. (2d) 566.

Appellants argue that by the order entered Nov. 19, 1940, the chancellor directed that claims be filed on or before Jan. 6, 1941, and as their claims were filed within sixty days from the date this order was entered a compliance was had with KS 2491 (KRS 376.190). But the ancillary receivers were appointed and took charge of the Corporation's property on Aug. 22, 1940, and under this statute suit had to be brought within sixty days from that event, Producers' Coal Co. v. Barnaby, 210 Ky. 244, 275 S. W. 625. Although the chancellor had no authority to extend the time allowed by statute for the bringing of suit or the filing of claims, yet neither appellant filed an intervening petition until Oct. 10, 1941, which was considerably more than one year after the receivers were appointed and more than ten months after the claims were filed and lacked but a few days of being a year from the entry of the order on Nov. 19, 1940, directing the filing of claims.

Even had the intervening petition of the Company been filed in time it could not have been adjudged a lien since neither its proof of claim nor its pleading shows the basis of its claim was an assignment of wages earned within six months before the receivership, and KS 2488 (KRS 376.160) limits such lien to wages coming due to employees within six months after the receivership. Although the petition and affidavit of Skaggs asserting

his claim was based on an alleged assignment of wages earned within six months before the receivership, both he and the Company must be denied a lien on the ground that the funds they alleged the Corporation held for their benefit did not represent an assignment to them of wages by the miners, but according to their intervening petitions such funds were entered on the Corporation's book to their credit because it was unable to pay same. It is clear that such funds represented loans to the Corporation by appellants rather than an assignment of unpaid wages by miners for their benefit. As was said in Southern Coal Co. v. Martin's Fork Coal Co., 286 Ky. 679, 151 S. W. (2d) 394, 398, "the general rule is that one who lends money to an employer to pay laborers, who if their wages had remained unpaid would be entitled to a lien therefor, is not entitled to be subrogated to the laborers' liens merely by virtue of making the loan to the employer. The loan must be made in expectation of being subrogated and under an agreement to that effect."

Appellants cite 60 C. J. Sec. 118, p. 816; Southern Exchange Bank v. American Surety Co. of New York, 284 Ky. 251, 144 S. W. (2d) 203, and many other authorities to the effect that where money is loaned on request for the express purpose of paying laborers or materialmen who had a lien on the fund owing to the contractor, with an understanding for subrogation, the lender is not deemed a volunteer and shall be subrogated to the rights of such laborers or materialmen. But these authorities have no application here as the miners had not complied with the statute and had no liens, hence there was nothing to which appellants could be subrogated. Nor was there any agreement or understanding for subrogation between the Corporation and appellants. "No rule of equity can be invoked in this case to give that relief which the statute denies or fails to furnish." Frailey v. Winchester & B. R. Co., 96 Ky. 570, 29 S. W. 446, 16 Ky. Law Rep. 645.

The judgment is affirmed.